## Lee *vs.* Payne.

When a lessee assigns his interest in the whole or a part of the demised premises, for the residue of the unexpired term, the assigneee is substituted in place of the original lessee as tenant, and stands in that relation to the original lessor. But where the demised premises are let for a part only of the unexpired term, the assignee is only a sub-lessee, and the relation does not exist between him and the landlord.

An instrument, purporting to be an assignment of a certificate of purchase therein recited, although duly proved, is no evidence of the certificate of purchase.

A certificate of purchase of School Lands, executed by J. C. F., "for J. D. P., Superintendent of Public Instruction," is not an execution authorized by the law in force March 27th, 1841.

Where the relation of landlord and tenant exists, the tenant is estopped from denying his landlord's title.

Case reserved from St. Joseph Circuit.

This action was brought by Lee against Payne, to recover the value of a grist mill and distillery, situated on section sixteen, in the town of Fawn River, in St. Joseph county, and claimed to have been burned through the carelessness and negligence of the defendant. The cause was tried at the December Term, 1854, by a jury, who found a verdict for the plaintiff of $5,200. Upon the trial, the plaintiff produced

a lease of the premises from himself to Clark & Peck, with several assignments thereof, and proved that immediately preceding, and up to the time of executing said lease, for some seven or eight years, he had been in possession and occupancy of the premises.

Defendant admitted the signature to the lease and assignments, which lease was in the words following, to wit : " This indenture, made this 9th day of February, in the year 1852, by and between Warren F. Lee, of Sturgis, in the county of St. Joseph, and State of Michigan, of the first part, and William Clark and Charles B. Peck, of said Sturgis, county and State aforesaid, of the second part, witnesseth as follows, to wit : The said parties of the first part, for and in consideration of the covenants and agreements hereinafter specified and entered into on the part of the second part, doth for himself, his heirs and assigns, covenant and agree as follows, viz. : The said party of the first part doth lease and to farm let, to the party of the second part, for the term of two years, from and after the fifteenth day of October next, the following described premises, with all the hereditaments and appurtenances thereunto belonging, viz. : The farm now occupied by William Clark, at Fawn River, St. Joseph county, and owned by me, together with the grist mill and distillery, dwelling houses, outhouses, barns, etc., situated thereon, and all the fixtures, machinery, tools, implements and apparatus necessary to carry on the business of milling and distilling, now used in said mill and distillery respectively. Said farm above mentioned, consisting of one hundred and twenty acres, being on the school section of town eight, of range nine, west. Said party of the first part to deliver said above described premises to said party of the second part, in good order and condition. In consideration of the covenants above mentioned, and entered into on the part of the said party of the first part, the said party of the second part doth for themselves, their heirs and assigns, covenant and agree

to rent of and from the said party of the first part, the said above described premises, fixtures and machinery, etc., for the said term of two years from and after the fifteenth day of October next, and fully to be complete and ended, and to pay to the said party of the first part, as rent for the same, the just and full sum of eleven hundred dollars per annum, year by year, as long as they shall use and occupy the same. Said rent to be paid as follows, to wit: One thousand dollars to Barnes & Pharo, of the city of New York, and one hundred dollars to the said Warren F. Lee. Said party of the second part also covenants and agrees to make all the repairs which may be necessary to preserve said premises in as good condition as they now are, the natural wear and decay only excepted, during the term of said lease, and to pay all the taxes which may, or shall be lawfully assessed upon the same during the time of their said lease.

" They also further agree to return and yield up quiet and peaceable possession of the said above described property to the party of the first part, at the expiration of said term, in as good condition as they now are, the natural wear and decay only excepted.

" Upon the performance by the said party of the second part of the covenants and agreements by them to be performed and done, the said party of the first part doth for himself, his heirs and assigns, covenant and agree to and with the said party of the second part, their heirs and assigns, the quiet and peaceable possession of the said above described premises, with the appurtenances during the time of his said lease. It is further mutually understood and agreed by and between the parties, that in case the grist mill or distillery should be consumed by fire during said term, then, on and after that time, the rent shall cease, and said party of the second part shall leave the premises.

[Signed,]
          " WARREN F. LEE, [*L. S.*]
          " WM. CLARK,     [*L. S.*]
          " C. B. PKEC,"    [*L. S.*]

The plaintiff then produced an assignment of said lease of said premises, from Clark & Peck to David C. Payne, subject to the rents and covenants contained in the lease, and dated July 1st, A. D. 1852. Also an assignment of said lease, from the said David C. Payne, bearing date November 4th, A. D., 1852, to Jonathan G. Waite, subject to the rents and covenants contained therein. Also an assignment of the said lease, from the said Jonathan G. Waite to Allen Payne, reserving a house and lot on the premises embraced in said lease, then occupied by Warren F. Lee; which last assignment bore date November 29th, A. D. 1852.

Plaintiff then offered the lease and assignments in evidence. Defendant objected, on the ground that the writing between Waite and defendant, purporting to be an assignment of the lease, since it mentioned but a portion of the premises described in the lease, was a sub-lease from Waite to defendant. The Court overruled the objection, and defendant excepted. Plaintiff then proved that Clark and Peck went into possession and occupancy of the premises under said lease; and also, that the several assignees of the lease, each successively entered into possession and occupancy of the premises under their respective assignments, and that the defendant went into the possession of the premises mentioned in the assignment of Jonathan G. Waite to him, under said assignment, and continued in the possession and occupancy up to, and including the time the said mill and distillery were burned. The plaintiff, after introducing evidence to show negligence upon the part of the defendant, and the damages sustained in consequence by plaintiff, rested. The defendant then proved that the mill and distillery were located upon the south-west quarter of the the north-east quarter of section sixteen, township eight south, of range nine west; and then called as a witness Edmund Stears, who testified that he was Register of Deeds of St. Joseph County; that in vol. 12 of Deeds, pages 275, 276, 277

appeared the record of an assignment of Samuel P. Knight to Nathaniel P. Lee, of a certificate for the south-west quarter of the north-east quarter of section sixteen, in township eight south, of range nine west, which assignment, as recorded, purports to recite the certificate itself, and as having been issued by J. C. Frink for John D. Pierce, Superintendent of. Public Instruction, to John D. Freeman, on the 27th day of March, 1841. Said assignment, as recorded, also recites an assignment of said certificate by John D. Freeman to Samuel P. Knight, in September, 1841. The said assignment from Knight to Lee, as recorded, bears date July 27, 1842. On page 377 of said volume 12 of Deeds, appears also the record of an assignment of the above mentioned certificate by N. P. Lee to Geo. Barnes. The defendant offered the above records in evidence, which were objected to by plaintiff, and the objection sustained, to which defendant excepted. Defendant then offered in evidence the record of a certificate for the above described lands, purporting to have been issued by J. C. Frink for John D. Pierce, Superintendent of Public Instruction, to John D. Freeman, March 27, 1841. Plaintiff objected, and Court sustained the objection. Defendant excepted.

Defendant then offered in evidence an assignment from N. P. Lee to George Barnes, of what purported to be a certificate of purchase therein recited. Objected to by plaintiff, and objection sustained by the Court; to which ruling defendant, by his counsel, excepted.

The assignment from N. P. Lee to Barnes, recited the original certificates and assignments thereof preceding.

The defendant's counsel requested the Court to charge the jury : 1. That the evidence showed that the only evidence of title plaintiff ever had in and to the premises in question is, and was at the time of the commencement of this suit, owned by Geo. Barnes, of the city of New York ; 2. That the plaintiff could not recover unless he showed himself the

reversioner or owner in fee, or entitled to an estate for years; that the mere production of a lease and prior possession of plaintiff, was not sufficient proof of evidence of title to enable plaintiff to recover; 3. That there was no privity of estate existing between the plaintiff and defendant; that the record showed that the defendant was not the lessee of the plaintiff, but of Jonathan G. Waite; and that the present action could not be maintained against a sub-lessee; 4. That the only remedy of plaintiff against defendant for the waste complained of, was given by chapter 110 of the Revised Statutes; that the plaintiff, not having brought himself within the provisions of that statute, was not entitled to recover.

The Court refused so to charge; but, upon the law of the case, charged the jury as follows: 1. Waste is defined to be a spoil or destruction in corporeal hereditaments, to the disinheritance of him that hath the remainder or reversion in fee simple or fee tail; 2. In general, the action of waste lies against the tenant for 'life or for years, in favor of him who has the next immediate estate of inheritance in reversion, or in remainder; and to make out his case, it is necessary for the plaintiff to prove: 1st. His title, in stating which, he must show how he is entitled to the inheritance; 2d. The demise, if there be one, or other title of the defendant; and, 3d. The quality, quantity, and amount of the waste; 4th. The averment of tenure may be in the tenet, which the said A. holds, or in the tenuit, which he held. In the former case, he will recover the place wasted, or that part of the premises in which the waste was done, with the damages; in the latter case, the tenancy being at an end, the plaintiff will have judgment for damages only.

3. If a lessee for life, or for years, commits waste, and afterwards assigns his whole estate, the action for waste lies against the original tenant, and the place wasted may be recovered against the assignee; the title of his immediate

assignor having been forfeited previous to the assignment, but if the assignee commits the waste, he alone is liable to the action.

4. The present suit, however, is an action on the case in the nature of waste, brought by a landlord against the defendant, whom he claims was his tenant. In such a proceeding, the place wasted is not recovered, as the plaintiff goes only for damages.

5. It is not necessary in this action (in the nature of an action of waste), that the respective titles should be set out with as much precision as in the old action of waste, which is now seldom resorted to. The relation of parties to each other may be stated in a more general manner: as that the defendant was possessed of the premises described, during the period described, and held the same as tenant of the plaintiff, to whom the reversion, during the same period, belonged, under a demise previously made, and for a certain rent payable therefor to the plaintiff.

6. If the defendant is tenant for life, and plaintiff is remainder-man, or reversioner, it has been held necessary to set forth the quantity of the defendant's estate, but it is not necessary to state the quantity of the estate of the plaintiff.

7. Under the general issue which is not guilty in the action on the case, the plaintiff must prove: 1. Title; 2. The holding by the defendant as alleged; 3. The waste complained of, and the damages.

8. If the jury believe the evidence, and find that the plaintiff had, at the time he executed the lease, been in the actual and undisturbed possession of the premises for several years previous to its execution, and continued to hold possession of the same by his tenants up to the period when the property was destroyed, the fact, taken in connection with the relations of the parties existing by virtue of the lease and the several assignments submitted as proof, is evidence from

Lee *vs.* Payne.

which the jury may infer title in Lee sufficient to maintain this action.

9. If a lessee of a tract of land for years, after occupying part of the term, assigns the whole residue of the term for a part of the demised premises, the lessor may have an action against the assignee for the rent which accrues subsequent to the assignment, especially with the general clause contained in the assignment to the defendant by Waite, and that the said assignment was not an underleasing.

To which the defendant by his counsel excepted. The jury, under the charge of the Court, on the evidence submitted, found a verdict in favor of the plaintiff for five thousand two hundred dollars damages.

It was stipulated by the counsel for the parties, that the Circuit Judge should reserve for the opinion of the Supreme Court, the following questions of law, arising upon a motion for a new trial : 1. Whether the assignment from Jonathan G. Waite to defendant (a part of the premises originally leased being excepted), established such a relation between the plaintiff (Lee) and the defendant as to enable the plaintiff in this action to recover?

2. Whether the instrument purporting to be an assignment of a certificate of purchase therein recited, with the several assignments thereof offered in evidence by the defendant, should have been admitted?

3. Whether the Court should have charged the jury in accordance with the several propositions submitted by the defendant?

4. Whether the Court erred in charging the jury as above set forth?

*W. L. Stoughton, J. B. Howe,* and *Smith & Upson,* for plaintiff.

1. The assignment from Waite to defendant established such relation between plaintiff and defendant as enabled the

former to sue. The relation of landlord and tenant once established, attaches to all who succeed the tenant, however remotely. (*Jackson vs. Davis*, 5 *Cow.*, 123; *Benson vs. Bolles*, 8 *Wend.*, 175; *R. S.*, *ch.* 110, *sec.* 1.) The case is not affected by the fact that a house and lot on the demised premises was reserved for the plaintiff. (*Cox vs. Fenwick*, 4 *Bibb*, 538.)

2. Though the certificate of purchase is not executed in the manner authorized by statute, the defendant was rightly prohibited from introducing testimony impeaching his landlord's title. (*Coke Inst.*, 336 *a ; Bac. Abr.*, 7, 279.) In an action of waste the landlord is considered as entitled to the reversion so long as the tenant remains in possession, and so long he is liable for waste, even should he hold over. (1 *Campb. R.*, 360; *Cobb vs. Stokes*, 8 *East.*, 203; 9 *Ib.*, 310.)

3. The Court properly refused to charge the jury that there was no privity of estate between the plaintiff and defendant. (1 *Inst.*, 53; 7 *Bac. Abr.*, 271.)

4. The Court properly refused to charge that the plaintiff's only remedy was given by *Ch.* 110 *R. S.*

Finally, the negligent burning of the premises in this case was waste. (4 *Kent Com.*, 80; *Coke Inst.*, 53 *b;* 1 *Ves.*, 462; *Countess of Salop's case*, 5 *Coke*, 13.)

*J. W. Flanders, Gurney, Bishop, Brown,* and *VanArman,* for defendant.

1. Plaintiff's only remedy was by *Ch.* 110 *R. S.* (1 *Greenl., Cruise on Real Property*, 121, 122.)

2. There was no privity of estate between plaintiff and defendant. Defendant was not lessee of plaintiff, but of Waite. The present action cannot be maintained against a sub-lessee. (2 *Ohio R.*, 216.) While we admit the doctrine that where the relation of landlord and tenant is once established it attaches to all who follow the tenant, we deny its applicability to the present case. Defendant occupied the premises not as tenant of the plaintiff, but of Waite, his

assignor.  He was liable to Waite only for rent, and plaintiff could sustain no action therefor.  (2 *Ham.*, 215; 4 *Shep.*, 329; 8 *N. Hamp.*, 22; 2 *Metc.*, 504; 3 *Phil. on Ev.*, 151; 1 *Doug.*, 182; 1 *East.*, 302; 2 *Greenl. Cruise on Real Prop.*, 121, 122; 2 *Blackf.*, 111; 1 *Moore*, 100; 6 *Taunt.*, 301; 1 *New Rep.*, 290; 8 *Barn. and Cress.*, 486.)

3. Plaintiff cannot recover unless he shows himself the reversioner in fee, or entitled to an estate for years.  Production of a lease and prior possession, is not sufficient to enable him to recover.  The principle that a tenant is estopped to deny his landlord's title is admitted, but its applicability to this case, denied.  The action is not for any acts permissive or omissive mentioned in the lease, nor of covenant, but for injury to the freehold, and not to the plaintiff's possession. The plaintiff's interest must appear on the record.

4. The only evidence of title shown on the trial proved the title to be in George Barnes, of the City of New York.

5. This is an action for *permissive* waste, and to recover, the plaintiff must rely wholly on *R. S.*, 846 ; since at Common Law no action lies for permissive waste against a tenant for years.  The Statute of Gloucester having been repealed, and the Common Law restored, as it stood previous to the enactment of that statute by 6th Anne, Ch. 31.  (1 *Chitty Plead.* 141 ; 3 *Stark. Ev.*, 1659 ; 2 *Chitty's Bl. Com.*, 229 ; *Note* 7.)

The Court should have charged the jury as requested by defendant.  Plaintiff showed by his own lease an interest of one-eleventh of the value of the premises, and Barnes and Pharo of ten-elevenths ; consequently, under our statute, is entitled to one-eleventh of the value only, if anything. (*Ricord vs. Williams*, 7 *Wheat.*, 59.)

By the Court, PRATT, P. J.

The action of waste, under the old English practice, was a remedy given for injury to lands, houses, woods, etc., by a

tenant thereof for life or years, to the injury or prejudice of the heir, or of him in the reversion, or remainder. It was either *voluntary* or *permissive ;* the one by actual design, the other arising from mere negligence and want of sufficient care. The action was partly founded upon the Common Law, and partly founded upon the Statute of Gloucester, and was a mixed action; real, so far as it recovered the realty injured; and personal, so far as it recovered the damages for the injury. Originally, and under the old practice, the action was brought for both of these specific purposes, and if the waste was proved on the trial, the plaintiff recovered not only the premises injured, but also the damages he had sustained by reason of the injury. The action for this double purpose having fallen into disuse, was finally abolished in England by the Statute of 3d and 4th of William IV., Chap. 27.

In this country, although adopted in some of the States, it has been but very little used, having been, in practice, virtually superceded by the action on the case in the nature of waste for the recovery of damages merely, or by a bill in equity. In our own State, this action on the case is authorized by the statute. The *first* section of Chapter 110 of the Revised Statutes of 1846 expressly provides that, "If any guardian, or any tenant by the curtesy, tenant in dower, or for term of life or years, or the assigns of any such tenant, shall commit or suffer any waste, during their several terms or estates, of the houses, gardens, orchards, lands or woods, or of any other thing belonging to the tenements so held, without having a lawful license in writing so to do, they shall respectively be liable to an action on the case, for such waste." The *fifth* section of this chapter provides, that such action may be brought by the person having the next immediate estate, in fee, or for life or years, in the premises in question : or by any person who has the remainder or reversion, etc."

These provisions of our statute on this subject, are in

accordance with the legal practice which has been adopted, and long since fully established in England and in this country.   It is, therefore, clear that if the plaintiff in the case under consideration has sustained any injury by the defendant in his reversionary interest, he may have his action in this form, to recover the damages he has sustained.

But it is contended on the part of the defendant in this cause, that there was never any legal *privity* between the plaintiff and the defendant ; that inasmuch as the entire premises demised by the plaintiff in the lease were not assigned by Waite to the defendant, the relation of landlord and tenant between the plaintiff and defendant is not established, but that by reason of the exception, in the assignment of Waite to the defendant, of the house and lot, then occupied by the plaintiff, the defendant became merely the under tenant and sub-lessee of Waite, and not his assignee of the premises, and that, as such sub-lessee he was only liable to Waite, and therefore could not be legally considered a tenant of the premises, under the lease of the plaintiff.   This cannot be sound legal doctrine on this subject.   It is true that a mere under tenant or sub-lessee is not liable to the lessor.   But what constitutes the legal distinction between an assignee and sub-lessee ?   A lessee for years may assign his entire interest in the lease and premises, unless restrained by covenant not to assign without leave of the landlord, or he may underlet the whole or a part of the premises, for any less number of years than he himself holds. But if by deed he passes his interest for the whole term, it is, says Chancellor Kent, an assignment.   But if it is for a less time than the whole term, it is an underlease, a sub-letting. The lessee so underleasing may distrain, or sue for the rent due on the underlease, but if he assigns over the whole term, he cannot distrain, because he has no estate left in reversion. It is true that the sub-lessee is not liable to the original landlord for the rent reserved in the original lease ; but at common law, his goods and chattels, while on the premises, may be

legally distrained for rent in arrear, by the original landlord. But an assignee of the lessee, for the whole term, is liable for the rent reserved in the original lease ; or for any waste he may commit. The covenants to pay rent and keep the premises in · repair, etc., run with the land, and it is well settled that an assignee, at common law, is liable upon any of the covenants in the lease, that run with the land ; and when the defendant, in this case, went into possession of the premises, under the assignment of Waite, for the residue of the unexpired term, he voluntarily substituted himself in the place of the lessees, as tenant of the premises under the lease of the plaintiff, and assumed all the legal responsibilities of the lessees, to the lessor. The house and lot excepted from the assignment by Waite, in his assignment to the defendant, could make no legal difference. That does not constitute the true distinction between an assignee and sublessee. On this point, the case of Cox *vs.* Fenwick (4 *Bibb. R.,* 538), is clearly analagous, and undoubtedly settles the true legal doctrine on this point. In that case the declaration stated, that the plaintiff on the 31st day of October, 1803, demised to one Edwards, for the term of fifteen years, a tract of four hundred acres of land, with mills, etc., and for which Edwards agreed to pay annually a certain rent. Afterwards, and on the fifteenth day of October, 1806, the lessee assigned to the defendant the residue of the term, excepting a small piece of the premises, on the east end thereof ; averring a breach of the covenant by the defendant, in his failure to pay the rent reserved, etc. Judgment was rendered for the defendant on demurrer to the declaration ; to reverse which the plaintiff sued out a writ of error, and removed the case into the Court of Appeals, where the Court, in its decision, say : "The case must turn upon the point, whether the defendant is to be considered as a mere sub-lessee, or an assignee of the demised premises ; for if he is to be considered in the light of a mere sub-lessee, it is plain that he is only responsible to

his immediate lessor for the breach of such covenants as were entered into by him ; but if he is to be considered an assignee, then as the convenant to pay rent is one which runs with the land, it is equally plain that he is legally bound to perform according to the terms and conditions of the demise, and for any failure to do so, is responsible to the landlord, the same as the orignial lessee would have been. An assignee at common law is liable to an action upon any covenant, which runs with the land. Any one, therefore, who takes land as assignee of the lessee, must take it subject to all of its legal burdens. It is contended for the defendant, that he was but a sub-lessee, and not an assignee, for the reason that the whole of the premises demised to the original lessee, was not transfered to him. But this (says the Court), does not constitute the true ground of distinction between a sub-lessee and an assignee ; for if a lessee transfer the premises for only a part of the term, he to whom they are tranferred is but a sub-lessee, and not liable to the original lessor. But if a lessee transfers only a part of the premises, but for the whole term, the person to whom the transfer is made must be, at common law, considered an assignee of the part of the premises transferred to him, and liable to the original lessor. "

The assignment of Waite to the defendant is full and explicit. By it, Waite, for the consideration therein expressed and acknowledged, " bargained, sold, assigned and set over to the defendant, all of his right, title and interest in or to the lease and the premises above mentioned (excepting the dwelling house and lot then occupied by the plaintiff), together with all of his estate, right, title and interest in and to the said lands, tenements and hereditaments, which he had by means of said lease, or otherwise, subject, however, to the rents and covenants in said lease contained." The two prior assignments, the first, by Clark & Peck, the original lessees, to David C. Payne; and the second, by the said David C. Payne, to the said Johathan G. Waite, were each

substantially the same, in terms, to the last assignment made by Waite to the defendant, and equally full and explicit; both being the same as the last, subject to the rents and covenants contained in the lease. And, as appears by the evidence adduced by the plaintiff on the trial, and sent up with the case, the original lessees, and each of the assignees, went, in turn, into the possession of the premises, used and enjoyed the same; and that the defendant continued in the possession and use thereof up to, and including the time when the grist mill and distillery were destroyed by fire. In view of these facts, and the law of the case, no doubt can be entertained that the defendant entered into the possession and use of the premises, under the assignment to him, as assignee, and not as under tenant to Waite, and that in doing so, he did at once, in legal contemplation, enter into the relation of tenant to the plaintiff under the lease, and thereby rendered himself subject to all the the duties and obligations imposed by the lease on the original lessees. It must be so, for it is a well settled rule of law, that when the relation of landlord and tenant is once established, it attaches to all who may succeed the tenant, immediately or remotely. (*Jackson* vs. *Davis*, 5 *Cow. R.*, 123; *Jackson* vs. *Harsen*, 7 *Ib.*, 323; *Byrne* vs. *Beeson*, 1 *Doug. R.*, 179.)

On the subject of the second question, presented by the case for the opinion of the Court, very little need be said. The instrument in writing, purporting to be an assignment of a certificate of purchase therein recited, etc., offered in evidence on the part of the defendant, at the trial of the cause in the Court below, was properly rejected by the Court, for several reasons:

1. The assignment, although duly proved, was not evidence of the genuineness of the certificate of purchase therein recited, nor could the recital be received as evidence in the place of the original certificate, without laying the proper

foundation for the introduction of such secondary evidence, and therefore properly rejected.

2. The certificate of purchase recited in the assignment, purported to have been executed and issued by " J. C. Frink, for John D. Pierce, Superintendent of Public Instruction." This was not an execution authorized by law. The certificate purported to have been issued on the 27th day of March, 1841. At that time certificates of purchase were issued by the Superintendent, under the provisions of the Revised Statutes of 1838, which expressly directed and required the Superintendent "to make out and deliver to the purchaser a certificate, in the name of the People of this State, in his official capacity." (*R. S. of* 1838, *p.* 252, *Sec.* 12.) This provision of the statute had not, at the date of the certificate, been repealed, or in any manner altered, by any subsequent Act of the Legislature, nor did the statutes contain any provision authorizing the appointment of a deputy, or the employment of a clerk by the Superintendent. The certificate was not, therefore, legally executed, not having been executed by the Superintendent himself "in his official capacity," as required by statute; hence the evidence offered was properly rejected by the Court below on this ground.

3. Where the relation of landlord and tenant legally exists, the tenant is upon principle *estopped* from denying title in the landlord. If the original lessees of the premises in question had never assigned, and this suit had been brought by the plaintiff against them on the lease, clearly they would have been *estopped* from denying title in the lessor. "It was," says Professor Greenleaf, "an early rule of feudal policy, that the tenant should not be permitted to deny the title of his landlord, but as long as that relation existed, the title of the landlord was conclusively presumed, against the tenant, to be perfect and valid. And, though the feudal reasons of the rule have long since ceased, yet, other reasons of public

policy have arisen in their place, thereby preserving the rule in its original vigor. A tenant, therefore, by indenture, is not permitted at this day to deny the title of his lessor. It is the essence of the contract, that the paramount ownership of the lessor shall be acknowledged by him during the continuance of the lease, and that possession shall be surrendered at its expiration. He could controvert the lessor's title, without breaking the faith which he had pledged." (1 *Greenl. Ev.*, § 25. *See also* 2 *Starkie on Ev.*, 305.) If the original lessees, in such a case, would have been estopped, the defendant clearly must be, for it is a well established principle of law, that where a party to a deed is estopped, all other persons claiming under or through him are equally bound by the estoppel. This principle was well settled in the case of Stow *vs.* Wyse. (7 *Conn. R.*, 214.) The defendant was, therefore, properly prohibited, by the Court below, from introducing evidence, otherwise unexceptionable, which tended to affect or impeach the plaintiff's title to the premises.

The next question presented by the case for the opinion of this Court, is, in some respects at least, a most extraordinary question for reservation. It contains four distinct propositions, upon which the Court is asked to charge the jury :

1. "That the evidence shows, that the only evidence of title which the plaintiff ever had in the premises, was, at the commencement of the suit, owned by George Barnes, of the city of New York." The defendant, as appears by the case, offered certain evidence for the avowed purpose of proving this fact, which was rejected by the Court ; hence, the evidence was not legally before the jury, or in the case, for any purpose. But if it had been admitted, clearly it would not have been within the legal province of the Court to instruct the jury, what the evidence, in fact, proved, as requested by the counsel for the defendant. Whether the evidence establishes the fact, sought to be proved by it, is a matter exclusively for the jury to determine, and not for the Court.

Lee *vs.* Payne.

2. "That the plaintiff cannot recover, unless he shows himself the reversioner in fee, or owner in fee, or entitled to an estate for years," etc.   It is a well settled principle of the common law, which has not been abrogated, or in any manner changed by statute, that in the action of waste, by the landlord against his tenant, the tenant by reason of *privity*, cannot plead that the lessor hath nothing in reversion.   (*Coke's Inst.*, 356 ; 7 *Bac.*, *Abe.* 279.; 2 *Har. & John. R.*, 113.)   If he cannot legally plead it, most assurredly he cannot give evidence of the fact at the trial.   In such an action, the lessor, in legal contemplation, is entitled to the reversion, so long as the tenant remains in possession of the premises, although he holds over the term.   (1 *Campbell's Nisi Prius R.*, 360 ; 8 *East.*, 203 ; 9 *East.*, 210.)   In this suit, and as between these parties, the plaintiff is the legal claimant of the estate in reversion, and he alone has the only right of action against the defendant, for the waste alleged.

It clearly appears, by the evidence sent up in the case to this Court, that the plaintiff had been in actual possession and occupation of the premises a number of years prior to the execution of the lease thereof by him to Clark & Peck. This fact, in connection with the proof of the execution of the indenture of lease ; the possession and occupation of the premises under it, by the original lessees ; the execution of the several assignments, and the possession and occupation of the premises by the several assignees in succession under them, down to and including the defendant, constituted sufficient *prima facie* evidence of title, and a reversionary interest in the plaintiff.   And the additional proof of the destruction of the grist mill and distillery by fire, through the carelessness and negligence of the defendant, while in possession of the premises under the assignment of Waite to him, together with proof of the plaintiff's damage, was, beyond all doubt, sufficient to enable him *prima facie* to

recover in this action. The Court below was, therefore, right in refusing to instruct the jury, as requested on this point.

3. "That there was no privity between the plaintiff and defendant, and that the defendant was not the tenant of the plaintiff, but the tenant of Jonathan G. Waite, and that this action cannot be maintained against a sub-lessee." It is true, that if the defendant was merely the sub-lessee of Waite, there was no privity between the plaintiff and defendant; consequently the plaintiff could not have maintained an action against him for waste ; but it is not true in law, that the defendant was not the tenant of the plaintiff. The proposition, therefore, was double, and, as an entire distinct proposition, incorrect; and the Court properly refused to charge the jury as requested by this proposition. But this Court has already sufficiently expressed its opinion, on both branches of the proposition.

4. "That the plaintiff's only remedy, for the waste complained of, is given by chapter 110 of the Revised Statutes ; and that the plaintiff not having brought himself within the provisions of that statute, is not entitled to recover." It is certainly very difficult to perceive, by this proposition, the object which the counsel had in view. Chapter 110 does not contain all the law in force, in relation to waste ; nor is it to be presumed that the Legislature intended to embrace and codify, in this one chapter, all the law on that subject. It is in part a remedial statute, furnishing, among other new remedies, a remedy to landlords, by actions on the case, against their tenants for life, or years, for *permissive* waste, which were unauthorized by the common law. The action then, in the case under consideration, is clearly authorized by this chapter. But how, or in what manner in particular, the plaintiff has failed to bring himself legally within its provisions, does not appear by the case, nor has the counsel furnished the information in his brief submitted. It was the business of the counsel, in raising this objection, to have

stated wherein, and in what particular, the plaintiff had so failed ; but not having done so, he can take nothing by the objection.   On this ground alone, the Court below was justi-fiable in refusing to charge the jury as requested.

The fourth and only remaining question reserved for the opinion of this Court, is, whether the Court below errred in charging the jury, as stated and set out in the case.   This is another very singular question for reservation ; the entire charge of the Court below, on all the legal questions involved in the case, is set out at length.   If any exception was taken by the counsel to any particular part or point thereof, he was bound to specify, and state the grounds of his objection. But it is unauthorized by any practice which has ever been established, to bring, by a case made and agreed upon, the whole of a lengthy charge of the Judge to a jury, and ask this Court to look it all over carefully, and see if any errors can be discovered in it.   This Court, however, in this case, takes the question as reserved and presented, and say that, after a full and careful examination of the entire charge, no errors can be discovered in it.

Let it be, therefore, certified to the Circuit Court for the County of St. Joseph, as the opinion of this Court, that the motion for a new trial should be denied with costs.

Present, PRATT, JOHNSON, COPELAND, WING, GREEN, DOUG-LASS, J. J.