## John C. Blanchard v. Timothy M. Tyler and another.

*Bona fide purchaser, who is.* — To constitute a bona fide purchaser there must be want of notice both at the time of the purchase, and at the time of payment. Warner v. Whittaker, 6 Mich. 133.

Where, therefore, the defendant gave his note, not negotiable, for land of which complainant held a prior unrecorded deed, but was fully informed of complainant's equities before making payment of the note, it was held that he could not claim the protection of a bona fide purchaser.

*Bona fide purchaser: who may claim rights of.* — The defense of a bona fide purchase can only be made by the purchaser himself, or by some one claiming through his purchase.

*Deed of lands: presumption as to time of delivery.* — Where a deed is acknowledged on a day subsequent to its date, and there is no proof of delivery prior to the acknowledgment, it must be presumed to have been delivered afterwards; such being the usual course and practice in reference to the delivery of deeds and other instruments intended for record.

*Landlord and tenant: attornment to third person.* — It is entirely incompetent for a tenant, without the consent of his landlord, to change the nature of his tenancy, by attornment to a third person: — Byrne v. Beeson, 1 Doug. Mich. 179.

*Bill to quiet title: complainant's possession.* — Bill to quiet title to land. It appeared in evidence that a person who was in possession· as tenant of a third party, had, with his landlord's assent, attorned to two persons who were not shown to have any interest in the land, and one of whom afterwards, as agent for the complainant, executed a lease of the whole land to the tenant. It was held that this lease would estop the person signing it as complainant's agent from setting up any claim as against complainant, and that the possession of complainant by his tenant under it, ostensibly of the whole, and rightful at least for one half, was sufficient to enable complainant to maintain a bill, under the statute, to quiet his title to the land as against a third person claiming it.

*Heard April 21st. Decided May 3d.*

Appeal in chancery from Shiawassee Circuit. The facts are stated in the opinion.

*A. Gould* and *A. Pond* for the complainant, argued that, independent of the question of possession by com-

plainant, the bill might be maintained. The claim of complainant is to be relieved against the deeds of Tyler & Hearse obtained to commit a fraud, and the Court has jurisdiction, independent of the statute, to cancel a deed obtained by fraud, and which is a cloud upon title: — 5 *Paige*, 501; 2 *Paige*, 482; 14 *N. Y.* 6; *Story Eq. Juris.* 699, 700; 9 *Paige*, 388; 6 *Pet.* 5.

*McCurdy & Raynale*, for defendants, insisted, among other things, that complainant was not only not in *possession* of the land, but that he had no title to it; as by his own evidence it appeared that Lewis conveyed the land to Simonson one day before the execution was issued under which complainant claimed.

CHRISTIANCY J:

The bill was filed against Timothy M. Tyler and James Hearse, to remove a cloud upon complainant's title to an eighty acre lot of land in the county of Shiawassee.

The land was patented by the United States to Ira Merrill in 1837.

Merrill (and wife) conveyed to Augustus Grosvenor, July 4, 1838.

Grosvenor conveyed to George Dahash, August 2, 1853.

Dahash (and wife) conveyed to Abram Lewis, July 13, 1855.

All the above deeds were recorded soon after their date, except the one from Grosvenor to Dahash, which was not recorded till the 24th day of May, 1859; and this delay gave occasion to the transactions which led to the present suit.

Complainant derives his title through an execution sale to him upon a judgment against said Abram Lewis. The levy was made December 30th, 1856; the sale, February 28th, 1857: the sheriff's certificate of sale was filed with the register of deeds March 3d, 1857, and his deed was

executed to the complainant June 9th, 1860, after the time of redemption had expired, and was recorded the same day. Such is the title shown by complainant.

The defense rests mainly upon a deed from Grosvenor to Tyler, which will be presently noticed. On the 17th day of May, 1858, a few days before the time of redemption expired, Lewis, the defendant in the execution, executed a deed of the same lands to defendant Tyler; but this deed being executed long after the certificate of sale to complainant was filed, was void as against complainant; Tyler being chargeable with notice of the execution sale. But on the 21st day of May, 1858, Tyler obtained a quit claim deed for the same land from Augustus Grosvenor, whose deed to Dahash had not yet been recorded. The bill alleges that Tyler at the time he obtained this deed had knowledge of the previous deed to Dahash, and of complainant's rights, that the deed was without consideration, and that Tyler fraudulently procured it for the purpose of cheating and defrauding the complainant. From a careful examination of the testimony — which we do not deem it necessary here to review — including that of Tyler himself — which charity to him would hardly permit us to review — we are entirely satisfied that these allegations of the bill are well sustained by the proof. As against complainant, therefore, Tyler acquired no title either by the deed from Lewis or by that from Grosvenor.

But on the third day of August, 1858, Tyler (with his wife) executed a deed of the land to defendant Hearse, and has put in a disclaimer of all interest in the land. The bill charges that Hearse took this deed with full notice of complainant's rights, and of Tyler's want of title; alleges that he paid nothing for the conveyance, and that he received the deed for the purpose of defrauding complainant. Hearse denies this, and sets up the defense of a bona fide purchase for a valuable consideration without notice. We are strongly inclined to think from the testi-

mony of Hearse himself, who was sworn in his own behalf, that he was well aware of the nature of the title, and of the attempted fraud of Tyler, and that he took the conveyance for the very purpose of aiding Tyler in the perpetration of the fraud upon complainant. But whether he did so or not, or whether he had full notice at the time, is immaterial. He paid nothing to Tyler at the time. Tyler was owing him, he says, about seven dollars and fifty cents, which was to apply on the purchase, and he gave him a note, not negotiable, for six hundred dollars less the last mentioned sum. This note it was understood should be paid by turning out other notes. This it is claimed was done, but not till some considerable time afterwards. Yet he admits that immediately after the sale to him he was fully informed of the nature of the title. Whatever he paid, therefore, was after such notice; and such payment, if in fact any notes of value were turned out, was made in his own wrong, and he must bear the loss:—— *Warner v. Whittaker*, 6 *Mich.* 133.[*]

But it is objected, that complainant was not in possession at the time of filing the bill, and that, in the attempt to prove such possession, he has proved the title out of himself, and in one John L. Simonson.

Whether this bill could be sustained independent of the statute — *Comp. L.* § 3490 — we do not think it necessary to decide; as we think complainant has shown a sufficient possession to bring himself within the statute, if that be necessary.

Complainant introduced a deed executed by Lewis to John L. Simonson, bearing date the twenty-ninth day of December, 1856, one day before the levy of complainant's execution, but not acknowledged till the second day of January, 1857, the third day after the levy. In the absence of any proof of delivery prior to the acknowledgment, we must presume that it was not delivered till after the

[*] See also *Thomas v. Stone*, *Wal. Ch.* 117; *Dixon v. Hill*, 5 *Mich.* 404.

acknowledgment, such being the usual course and practice in reference to the delivery of deeds and other instruments intended for record as this was, and the deed being incom-plete for this purpose till acknowledged. The deed, therefore, being subsequent to the levy, the only ground, if any, upon which Simonson could claim title as against the sale to complainant, would be that of a bona fide purchase for a valuable consideration without notice. But this ground could only be made available by Simonson himself, and those claiming through or under him. Hearse does not claim through the deed in any way, but in opposition to it. Simonson may have had full notice, he may have known that all he was getting by his deed was the right of Lewis in the land subject to the execution, or he may have paid no consideration, and may not choose to set up any claim on the ground of a bona fide purchase; and his subsequent conduct in reference to the attornment of Fuller, his tenant, would indicate that he did not intend to insist upon such claim. So far as defendant Hearse is concerned, the levy must be treated as binding the land from its date. He can not invoke the aid of the registry law in favor of a deed under which he does not claim, and if he could, that law would cut off all claim he might have under the deed from Lewis to Tyler, as the deed from Lewis to Simonson was prior to that, and on record long before it.

Simonson put Fuller in possession in the spring of 1857, under an agreement that the latter should work the land, pay taxes, keep up the fences, &c. Fuller testifies that he continued to occupy under Simonson until the execu-tion of the lease made to him by complainant, through the agency of E. Gould, May 1st, 1860. By this the land was leased to Fuller "for the term of one year from the first day of August [then] next," which (Fuller being then in possession, and Simonson having agreed to his holding under the Goulds, as will presently appear) we

think must be understood as creating a tenancy from the date of the lease, and to expire a year from the first day of August then next.

Simonson's testimony was taken in February, 1862, and he testifies that more than a year before that time the Messrs. Gould—both Amos and Ebenezer Gould—had asked him if he was willing to let Mr. Fuller hold possession under them, and that he assented to his doing so. It was doubtless soon after, and probably in consequence of this assent, that the lease to Fuller was executed by E. Gould, as the attorney and in the name of Blanchard. And as it does not appear that either of the Goulds ever had or pretended to have any claim to the land in their own right, we think it is fair to infer from the circumstances of the case, that the assent of Simonson to Fuller's attornment was obtained for the benefit of complainant, and that both the Goulds were acting in his behalf, though there is no direct evidence of this. Fuller testifies that up to the time of this lease he was in possession under Simonson; that he never occupied by arrangement with Hearse, nor under Tyler.

But if the attornment had been actually made to the Goulds in their own right, the execution of the lease by E. Gould as agent of the complainant, would estop him, at least, from claiming against complainant, and have the effect to put complainant into possession of the undivided half as tenant in common with A. Gould, if nothing more, to say nothing of the improbability of E. Gould consenting to act as the agent of complainant, and as such leasing the whole property to Fuller, if either he or Amos Gould claimed any right in the property. The lease purported to be for the whole property, and the tenancy was ostensibly of the whole; but if it was rightful only for one half as a tenancy in common, still we are inclined to think such possession was sufficient to enable complainant to sustain his bill under the statute.

But it is insisted by defendant Hearse, that immediately after the thirtieth day of August, 1858, when Tyler's deed to him was executed, he, Hearse, let the land to Fuller, and that Fuller was in possession under him as tenant at the time the bill was filed. But it is clear from the testimony of Hearse himself, that when he called upon Fuller, and when this pretended letting took place, Fuller was already in possession; and from the testimony of Fuller and Simonson, it is also clear that he had been in possession over a year, and then was in possession, under Simonson. It is therefore wholly unnecessary to determine what kind of arrangement was actually made on that occasion between Hearse and Fuller as to the latter becoming the tenant of the former; since it was entirely incompetent for Fuller, without the consent of Simonson, to change the nature of his tenancy by acknowledging Hearse as his landlord. See *Byrne v. Beeson*, 1 *Doug. Mich.* 179.*

Hearse says he went to the land with Lewis and Tyler to take possession; that Fuller informed him of his holding under Simonson; that Lewis told Fuller he, Lewis, had sold to Tyler, and Tyler to Hearse, and they had come to take possession, &c. Such was the ground upon which Hearse's claim of possession was based; and the attempt to change the tenancy of Fuller by the pretended arrangement claimed to have been made there, was not only clearly fraudulent, but it shows that Hearse claimed title through Lewis, the defendant in the execution; and that his claim was therefore thus far invalid as against the levy and sale to complainant.

We think the decree of the Court below was clearly right in declaring the deed from Abram Lewis and wife to Tyler, that from Grosvenor to Tyler, and that from

* See also *Falkner v. Beers*, 2 *Doug. Mich.* 117; *Lee v. Payne*, 4 *Mich.* 106.

BLANCHARD *v.* TYLER.

Tyler and wife to defendant Hearse, void as against complainant, and in decreeing a release from defendants; and that decree must be affirmed, with costs.

The other Justices concurred.