WESLEY L. HOFFMAN v. BRITTAIN CLARK.

*Tenant at will— Title to land—Litigation of.*

1. Where the owner of a dwelling-house situate on land the title to which was in dispute sold it to one of the claimants, reserving the *right* of *occupancy* for a *given* period as a part of the purchase price, but failed to remove at the expiration of such reserved term, and thereafter occupied the building for nearly four months, without any special arrangement with his vendee,—
   *Held*, that the consent of the vendee to such occupancy might be implied, and that the vendor became a tenant at will of his vendee.[1]

2. Where the right of a plaintiff in a summary proceeding to recover the possession of a dwelling-house depends upon the *ownership* of the *land* upon which the *house* in dispute stands,—
   *Held*, that such *title* could not be tried in the proceeding.

Error to St. Clair. (Stevens, J.) Argued July 15, 1886. Decided October 14, 1886.

Appeal from judgment of commissioner in summary proceedings. Case under the statute. Defendant brings error. Reversed. The facts are stated in the opinion.

*Frank Whipple* and *James L. Coe*, for appellant.

*Harris & Vance*, for plaintiff.

CHAMPLIN, J. Plaintiff commenced proceedings before a circuit court commissioner, by a complaint made by John

———

[1]As to termination of such a tenancy, see How. Stat. § 5774; amended by Act 162, Laws of 1885.

M. Hoffman in behalf of plaintiff, alleging that the defendant was then in the possession of lands and premises situated in the township of Fort Gratiot, in St. Clair county, described as follows:

"The south half of the south half of Fishery No. 1, so called; said Fishery No. 1 being more particularly described as commencing at the north line of the light-house reserve, and extending 120 rods north of the north line of the McNeil tract, so called, including the land lying between the lake road and the lake;"—

And further alleging that said Brittain Clark holds the said premises unlawfully, and against the rights of said Wesley L. Hoffman.

The McNeil tract is located upon two private claims of Bonhomme and La Salle, and was divided into lots of various sizes, from 5 acres up to 30 and 40 acres each.

It appears from the testimony of Mr. Paldi, a surveyor, that the survey of the McNeil tract was made on the twenty-first day of December, and recorded the thirtieth day of December, 1841. Previous to this time, and on the first day of February, 1841, the fishery in question had been conveyed by Charles Butler, trustee, to William Bard, Thomas Suffern, and James McBride, in which deed it is described as—

"Fishery No. 1, on the lake shore, beginning at the north line of the light-house reservation, on the lake, and extending northerly 120 rods north of the north line of the McNeil tract, so called, including the land lying between the lake road and the lake."

Plaintiff derives his title through mesne conveyance from the grantees in this deed.

It appears that in 1878 or 1879 the defendant purchased from one Robert Holland a building used for a dwelling, for which he gave Holland $16. The land upon which the building stood appears to have been uninclosed and unimproved.

Plaintiff claims to derive title to the land through Robert Holland and one Suffern as immediate grantors.

It appears, also, that one Edison claims to own the land upon which the building occupied by Clark stands; and that six or seven years before the trial in the court below, Clark obtained permission from Edison to occupy the land with his house, and has remained in possession under that permission ever since. It further appears that the premises where the house stands have been assessed to Edison, as the owner, by the supervisor. Plaintiff obtained his deed from Robert Holland and Suffern in 1882. He afterwards, and on January 25, 1884, obtained a bill of sale from Clark of the house, for which he paid Clark $20. The bill of sale contained a clause that he might occupy the house until May 25, 1884, free of rent, as a further consideration for the bill of sale. At the expiration of this time Clark did not remove from the premises, and on June 14, 1884, plaintiff served written notice upon him to quit and deliver up possession of the premises he then held of him, describing the premises as follows:

"The house and buildings now occupied by you, situate on the south-west corner of Fishery No. 1, on the lake shore, above and adjoining the light-house reserve, in the town of Fort Gratiot, county of St. Clair, and State of Michigan."

July 5, 1884, plaintiff, by his agent, made complaint before Charles K. Dodge, circuit court commissioner, in which complaint he avers —

"That Brittain Clark is now in possession of the following described lands and premises, situate in the township of Fort Gratiot, in said county, to wit: The south half of the south half of Fishery No. 1, so called; said Fishery No. 1 being more particularly described as commencing at the north line of the light-house reserve, and extending 120 rods north of the north line of the McNeil tract, so called, including the land lying between the lake road and the lake; that said Brittain Clark holds the said premises unlawfully, and against the rights of said Wesley L. Hoffman."

63 MICH.—12.

There was nothing in the bill of sale which created the relation of landlord and tenant. There was no letting of the premises, and no rent reserved. Clark sold the house for $20, and reserved the possession and use thereof four months as part of the consideration of the sale. He continued to occupy it after the expiration of that time, without any special arrangement with plaintiff, from the twenty-fifth of May to the fourteenth of June. From the length of time which elapsed after the twenty-fifth of May, the consent of plaintiff to such occupation may be implied, and Clark would thereupon become tenant at will of plaintiff, and such is plaintiff's claim. But this is fatal to his action, for a tenant at will is entitled to three months' notice to quit, in the absence of an agreement to pay rent at shorter intervals than three months, which was not the case here. There was testimony tending to show that the house in question was formerly owned by Robert Holland, and, on account of the shore of the lake washing away, had been moved back at least two different times, and upon the land claimed by Edison, but without his consent. Witness Edison testified that he had a talk with Holland about it, and was asked to state the conversation. This was objected to by plaintiff's counsel, but no reason for the objection is stated. The defendant's counsel stated that he proposed to show that witness had a talk with Holland, and they arrived at an understanding. The court thereupon sustained the objection. This was error. The statements made by Holland in disparagement of his title were admissible, and the understanding they arrived at with reference to the house was admissible. The only right which Clark obtained to occupy the land upon which his building was situated was derived from Edison, and he could not place himself in the position of a tenant to plaintiff of this land without first having surrendered them to Edison. *Blanchard v. Tyler*, 12 Mich. 339. Hence we see that when plaintiff claims the right to the possession of the land from

Clark, and commences proceedings to summarily evict him therefrom, Edison's claim is put forward as a defense (*Byrne v. Beeson*, 1 Doug. 179; *Fuller v. Sweet*, 30 Mich. 237; *McGuffie v. Carter*, 42 Id. 497); and the case seems to have lost the character of a litigation between landlord and tenant, and assumed the substance of a litigation in which the title to the premises whereon the house is situated has been tried.

The main controversy upon the trial was as to the location of the road described in the aforesaid deed. If it was eastward of the house occupied by the defendant, then such occupancy was not upon lands of Fishery No. 1, claimed by the plaintiff. If, on the other hand, the road referred to in the deed lay to the westward of the house occupied by defendant, then it was situated upon the fishery.

Upon this subject the court charged the jury as follows:

"The important question for you to consider will be whether or not the house occupied by the defendant and his family is or is not on Fishery No. 1. As frequently stated before you by counsel for the respective parties, and, as I recollect, also stated by witnesses, two private claims, known as the La Salle and Bonhomme claims, were platted in the year 1841, and since such platting have been known as the McNeil tract. The plat of such tract, which was filed with the register of deeds of St. Clair county in December, 1841, has been introduced in evidence, and upon such plat it appears that a road is represented as running in a northerly direction along the lake shore, a short distance west of the margin of the lake.

"The strip of land commencing at the north line of the light-house reservation, and extending 120 rods north of the McNeil tract, and lying between the lake road above mentioned and the lake, is what is understood to be Fishery No. 1. The western boundary of this fishery is the lake road, so called. It is claimed by the defendant that, by the action of the water of the lake, that part of Fishery No. 1 at the point in controversy has been washed away, so there is now no land lying between the lake road and the lake east of where defendant's house is situated, and that the building in which he lives is situated on out-lot No. 17 of the McNeil tract, and not on the fishery.

"The complainant insists that out-lot 17, which lies between Huron avenue, so called, and the lake road, is twenty chains and forty links in length, east and west, and that it was so platted and laid out; and that from the center of Huron avenue to the center of the lake road the distance is given on the plat, as is above stated, viz., 20 chains and 40 links, and the land lying to the east constitutes the fishery; and that he has demonstrated by actual measurement that the effect of the water has not been such as to wash away the land, and that, in fact, defendant is not upon out-lot 17, but is east of it, on Fishery No. 1.

"On the other hand, defendant claims that the distance from the center of Huron avenue to the center of the lake road, along the south side of out-lot 17, should be 24 chains and 40 links, and he insists that it was so originally platted and laid out; and, furthermore, that the old road originally laid out corroborates his theory, and he has shown that he is not on the fishery, but on land situated west of where it should be.   The distances indicated on the plat on file having become considerably obscured by time, it is difficult to tell, without close inspection of the plat, what the distances originally indicated on it are; and if the lake road was at any time laid out and opened along the lake shore as indicated upon the plat, so much time has intervened since it was so laid out and opened that its exact location is a question upon which there appears to be considerable conflict.

"As I understand, the McNeil tract having been platted into blocks and lots and out-lots, with streets and roads running through it, except it can be clearly shown that such streets or roads have been actually laid out and staked by the original proprietors on the land, the plat should govern; and, in any event, the plat should control unless it has been shown that the road and streets, as laid out and located by the original proprietors of the land, is different from the plat signed by them.

"In this case it is claimed that there is evidence that indicates that the lake road, so called, at an early day, was laid out across the McNeil tract, and whether in a different place than that where it should be to correspond with the plat must be determined by the evidence; and I therefore instruct you that the plat, as filed with the register of deeds of the county of St. Clair, should govern you in determining where the lake road should be, except you are satisfied that the lake road was actually laid out at a different point than that

laid out on the plat, and as to whether or not there is any land in point in controversy between the said road and the lake. And if you shall conclude, as a matter of fact, that Fishery No. 1, as originally platted at the time of laying out the McNeil tract, still exists, as claimed by complainant, and that the defendant is living in a house situated upon such fishery, then your verdict will be for the complainant. If, however, you believe from the evidence that there is no land remaining east of the lake road as laid out, or as it should be laid out, in accordance with the plat, and that, as a consequence, the house occupied by the defendant is not upon the fishery, than your verdict will be for defendant."

It is evident from the testimony and the charge of the court that the right of the plaintiff to recover depended upon the ownership of the land upon which the house stood. We do not think that the title to land can be tried in a summary proceeding of this kind.[1] Upon another trial this feature of the contest may possibly be eliminated. If it cannot be, it would seem to be useless for the plaintiff to pursue this remedy further.

Upon this record we must reverse the judgment, and grant a new trial.

The other Justices concurred.

[1]See *Vos v. Dykema,* 26 Mich. 401; *Bennett v. Robinson,* 27 Id. 31; *Foss v. Van Driele,* 47 Id. 204; *Riggs v. Sterling,* 51 Id. 159.