J. T. MARRS ET AL. V. N. J. LUMPKINS.

Decided January 10, 1900.

1. **Landlord and Tenant—Subletting—Waiver.**

The waiver by a landlord of the statute against subletting, and his written consent thereto, is not a waiver of his lien on the crops raised on the premises; this is not released by the subtenant's payment to the tenant of the rent agreed on between them.

2. **Same—Landlord, Tenant, and Subtenant.**

Where one rents from a tenant with the landlord's consent he occupies the relation of tenant to the landlord and the original tenant; if he pay rent to the landlord he is entitled to credit therefor on the claim of the original tenant against him; but he can not have credit on the landlord's claim for rent paid to the original tenant.

3. **Landlord's Lien—Conversion—Suit.**

The landlord can sue for conversion one who converts crops on which he has a lien for rent.

4. **Conversion—Evidence—Immaterial Error.**

Three defendants were sued as partners and also as joint tort feasors in converting property subject to the landlord's lien of plaintiff. It being found that they acted together in the conversion, the admission of improper evidence to establish their partnership was not ground for reversal.

APPEAL from the County Court of Milam. Tried below before Hon. W. M. McGREGOR.

*W. A. Morrison,* for appellants.

*Henderson, Streetman & Freeman, N. H. Tracy,* and *Clement, Garner & Clement,* for appellee.

COLLARD, ASSOCIATE JUSTICE.—This suit was instituted the 20th day of January, 1899, in the County Court of Milam County, by N. J. Lumpkin, appellee, against L. B. Frazier, J. T., J. P., and J. E. Marrs, on note of Frazier for $450 for rent of plaintiff's farm for the year 1898, alleging that he had rented the farm to Frazier on the 1st day of April, 1896, for three years, 1897, 1898, and 1899, Frazier executing his three notes for $450 for each year, stipulating that each was given for rent of 150 acres of land for each year. Plaintiff alleged that by some agreement the defendants Marrs went into possession of the premises and cultivated same in the year 1898, raising thereon 4000 bushels of corn, which they had converted to their own use, and thus became liable for the amount of the rent.

Defendants Marrs filed separate answers: J. T. Marrs by demurrer, and set up that plaintiff by written consent agreed that Frazier was authorized to sublet the premises, and that he rented eighty-five acres of the land from Frazier for the year 1898, by such permission, for $350, for which he executed his note to Frazier bearing 10 per cent interest per annum, which amount he had paid to Frazier; that Frazier subsequently rented to one Dawkins the remaining part of the place for the same year

for $60, taking his note for the same, due November 1, 1898, and afterwards said Dawkins, on the 1st day of January, 1898, assigned to this defendant his rental contract with Frazier, and he, Marrs, assumed the payment of the note for $60, and afterwards before maturity paid the same, thus paying the rent of the land rented to Dawkins; that by the terms of his rental contract, the lease expired on the 1st day of January, 1899, since which time he has not occupied the premises as tenant. He further averred that by the permission to Frazier to subrent, plaintiff waived payment of rent by defendnat and thereby agreed to look alone to Frazier for his rent, and therefore he is not liable to plaintiff for the rent.

Defendant J. T. Marrs filed demurrer and general denial.

Defendant J. P. Marrs adopted exceptions and answer of J. T. Marrs; and averred that he had nothing to do with the rental contracts set up by his codefendant J. P. Marrs; denied generally, and set up that he was a minor at the time of the several contracts, and had no connection with the renting of the land, but worked and labored on the farm for his codefendants, who were brothers, with whom he lived.

Plaintiff filed supplemental petition, demurring to answers, and specially excepting to the plea of minority upon the ground that his minority will not protect him upon the charge of conversion of the crop; denied generally the answers, and further averred, that defendants, J. T., J. E., and J. P. Marrs were partners in merchandise, and as such made the contract with Frazier for the rental of the land and payment of the rent, and as such copartners cultivated the farm; and that the crop raised was partnership property; and that each of defendants participated in the conversion of the said crop.

J. P. Marrs filed a plea under oath denying that he was a partner of J. T. and J. E. Marrs under firm name of Marrs Bros. in the conduct of the mercantile business or in any manner or for any purpose, as charged by plaintiff.

June 21, 1899, plaintiff dismissed as to defendant Frazier upon the ground that he was insolvent and his whereabouts were unknown and no service had been had upon him, and judgment was rendered, as between plaintiff and other defendants, overruling their demurrers and exceptions, and after hearing the evidence, the court, without jury, rendered judgment for plaintiff against the defendants served, for his damages, $450; the same being found to be the rent due for the year 1898, to bear interest from date, the judgment containing the conclusions of fact and law, as found by the court upon request of defendants, which are as follows:

"1. The plaintiff N. J. Lumpkin was, on the 1st day of April, 1896, the owner of a farm in Milam County, Texas, and on said date made a written contract of rent whereby he let the same to L. B. Frazier for the years 1897, 1898, and 1899, at an annual rental of $450 per year, payable on the 1st of January, 1898, 1899, and 1900 respectively, as

evidenced by the notes of said Frazier to said Lumpkin and also by the contract. The rent was secured by the landlord's lien on the crops.

"2. Afterwards, on the 16th day of October, 1897, the plaintiff executed a written waiver to the prohibition against subletting, as follows: 'This certifies that I have given this day to L. B. Frazier, my tenant, the right to sublet any part of the premises in this lease to anyone whomsoever it may suit him to rent same to, and I will hereby waive the prohibition of the statute against subletting.'

"3. Said waiver was given to enable said Frazier to rent fifty acres of said premises to said defendants for year 1898, and it was understood that said defendants were to give their note for $250 to the plaintiff, as rent therefor, and it was understood at the time that said waiver was not a waiver of the landlord's lien, but that said lien remained, all of which was known to defendants. The defendants did not rent from Frazier under above agreement; but after plaintiff had left, they did rent the entire premises from Frazier under some sort of an agreement by which they were to pay Frazier the entire rent, and before the institution of this suit, the Marrs paid the rent to Frazier in accordance with their contracts with him, as pleaded by them, $180 of which was a preexisting note. Plaintiff did not know of this subletting until early in the fall of 1898, when he found the defendants were cultivating the farm and were refusing to pay him any rent, and claiming that they were to account to Frazier for the rent.

"4. Defendants rented from Frazier about the 12th of November, 1897, and made a corn crop on the said farm during the year 1898. They raised about 5000 bushels of corn, worth about 20 cents per bushel, or in the aggregate about $1000. They began to harvest the corn in September, 1898, and began to remove it off the rented premises to Rockdale, about seven miles therefrom. While they were so removing it, plaintiff went to them and demanded payment of the rent before the corn was removed, and they each refused to pay the rent; and he then notified each one not to move the corn until the rent was paid. They continued to move it and did move all of it off the premises.

"5. L. B. Frazier was at that time and has ever since been notoriously insolvent and had and has no property subject to execution, and ever since the institution of this suit his whereabouts have not been known and he could not be found, and he has not been served with citation and has not entered an appearance.

"6. Frazier has never paid the rent to plaintiff and the defendants have never paid it to plaintiff. It became due on the 1st of January, 1899, the amount being $450.

"7. The defendants converted and appropriated the entire crop of corn to their own use.

"8. Defendants were partners at the time they rented from Frazier and in making the crop.

"Findings of Law.—The court finds as a matter of law that the plaintiff N. J. Lumpkin had a landlord's lien on the said corn crop produced

by said defendants on said premises for amount of rent for 1898 of $450, and is entitled to a judgment against said defendants for said amount."

*Opinion.*—The three notes were given by Frazier, one for each year, as alleged in the petition, for rent of the farm of plaintiff, as alleged; the note set up in the petition was for the rent for the year 1898. By permission of the landlord, Frazier sublet the premises to defendants, the Marrses, for that year, which consent was in the following language indorsed on the back of the lease to Frazier: "This certifies that I have given this day to L. B. Frazier, my tenant, the right to sublet any part of the premises in this lease to anyone whomsoever it may suit him to rent same to, and I will and hereby do waive the prohibition of the statutes on subletting."

The corn, as alleged, was raised in 1898 by the Marrses on the farm sublet, eighty-five acres to J. T. Marrs, one of the firm of Marrs Bros., and the remaining part of the farm to one Dawkins, as alleged, who assigned his rental rights to J. T. Marrs, thus investing the Marrs Bros. with the lease right to the entire farm for the year 1898, as subtenants, and they converted the corn, as alleged by plaintiff, to their own use, J. P. Marrs assisting them in removing the corn from the premises. They paid the rent as agreed on to Frazier for that year, but neither Frazier nor anyone else paid any rent to plaintiff for that year. As against the Marrses, the suit is for conversion by them of the crop on which the landlord had a lien for rent, to the amount of the rent due by Frazier, the corn crop converted being of value greater in amount than the rent.

The principal contention of appellants is that the written consent of the landlord Lumpkin to Frazier to sublet and his waiver of the statute against subletting, was a waiver of his right of lien on the crop raised on the premises, and that he must look alone to Frazier for his rent. This contention can not be sustained. The rule is the reverse of this contention. There was no waiver of rent; the waiver is only to sublet. The crops of the subtenants in such case would be subject to the landlord's lien for rent to the extent of his claim against the original tenant. The payment of the rent, in such case, to the original tenant by the subtenants, would not release the crop from the landlord's lien. As was said by Chief Justice Stayton in Forrest v. Darnell, 86 Texas, 651, the crop in such case may be under a double lien, to the original landlord and to the original tenant. When one rents from a tenant with the landlord's consent, he occupies the relation of tenant to the landlord and the original tenant. *Id.* If the subtenant, in such case pay rent to the landlord, he would be entitled to a credit for the amount paid on the claim of the original tenant against him. *Id.* The subtenant can protect himself from payment of double rent, but not at the expense of the landlord.

The landlord can sue for conversion one who converts crops upon which he has a lien for rent. A mortgagor or lien holder upon personal

property has this right to the extent of the value of the mortgaged chattels converted in payment of his secured debt, and this though the mortgagee is not entitled to possession. Fouts v. Ayres, 32 S. W. Rep., 435; Machine Works v. Templeton, 82 Texas, 443.

The court admitted in evidence deed records of Milam County, wherein was a deed to land recorded from L. B. Frazier and wife to Marrs Bros., a firm composed of J. T., J. E., and J. P. Marrs; and also another deed to same land to Mrs. M. A. Marrs, in which the grantors style themselves as "Marrs Bros., a firm composed of J. T. Marrs, J. E. Marrs, and J. P. Marrs." Both deeds were read in evidence to show that J. P. Marrs was one of the firm of partners, as claimed by plaintiff, denied under oath by J. P. Marrs. The first deed was not dated, but was acknowledged for record the 17th day of February, 1897. The second deed was dated February 5, 1898. The record of these deeds was objected to upon the ground that no notice had been given to defendants to produce them, and that it was secondary evidence which could not otherwise be admitted. Defendants reserved an exception to the court's ruling and assign error on the point.

Technically, the deed records were not admissible. But the court found as a fact that the defendant rented the land from Frazier and paid the rent to Frazier; that they raised a corn crop on the farm in 1898, 5000 bushels of corn, worth about $1000, and that they began to harvest the corn in September, 1898, * *. * and began to remove it off the rented premises to Rockdale, seven miles therefrom. While they were so removing it, plaintiff went to them and demanded payment of the rent, and they each refused to pay the rent, and he then notified each not to move the corn until the rent was paid; they continued to move it, and did move all of it off the premises." The court also found that the defendants "converted and appropriated the entire crop of corn to their own use."

These findings of the court, which are not assailed by appellants, make the defendants joint tort feasors in the conversion of the corn on which plaintiff had a lien, and outside of the alleged fact that they were partners, would render each of them liable, and plaintiff had the right to sue either or all of them for his damages. Markham v. Navigation Co., 73 Texas, 247.

The foregoing disposes of all the material questions raised by appellants, and finding no error as assigned, the judgment of the lower court is affirmed.

*Affirmed.*

Application for writ of error was dismissed by the Supreme Court for want of jurisdiction.