IVY v. PUGH et al.

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 8, 1913.)

1. ESTOPPEL (§ 37*)—PROPERTY SUBJECT—AFTER-ACQUIRED PROPERTY—CROPS.

A chattel mortgage upon property not in existence may become operative if the property covered subsequently comes into the possession of the mortgagor, on the equitable principle of estoppel, rather than on the principle that the execution of the mortgage then creates a valid lien upon the thing mortgaged.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 91–98; Dec. Dig. § 37.*]

2. VENDOR AND PURCHASER (§ 54*)—REMEDIES OF VENDOR—LIEN.

A vendor of real estate retains the superior title until the purchase money is paid.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 85; Dec. Dig. § 54.*]

3. CHATTEL MORTGAGES (§ 138*)—LIEN—PRIORITY.

Rev. Civ. St. 1911, art. 5475, gives to a landlord a preference lien upon the crops raised for any rent and for money and supplies furnished to the tenant in making a crop. A purchaser in possession of land, subject to a vendor's lien in favor of the plaintiff, on November 23, 1911, executed to defendant a chattel mortgage on cotton to be raised the next year on the land, and thereafter on March 26, 1912, before any crop had been planted, conveyed to plaintiff, and the same day entered into a rental contract with plaintiff for the lands. *Held* that, though a chattel mortgage upon property not in existence may become operative if the property subsequently comes into the possession of the mortgagor, yet that, as the mortgagor never acquired any but a qualified interest in the crop, the landlord's lien thereon was superior to that of the mortgagee.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 228–236; Dec. Dig. § 138.*]

Appeal from Parker County Court; T. F. Temple, Judge.

Action by W. T. Ivy against H. R. Pugh, J. M. Hart, and another. Judgment for defendant Hart, and plaintiff appeals. Reversed and judgment rendered for plaintiff against defendant Hart.

R. L. Stennis, of Weatherford, for appellant. Preston Martin, of Weatherford, for appellee.

SPEER, J. This suit was instituted by W. T. Ivy against H. R. Pugh, J. W. Light, and J. M. Hart, alleging that the defendant Hart had wrongfully converted to his own use certain cotton upon which plaintiff as landlord held a valid lien as against Pugh and Light, his tenants. Hart pleaded that he took the cotton under a mortgage lien which was prior in law to plaintiff's lien. The honorable county judge before whom the case was tried made the following findings of fact, which we adopt:

"1. I find that on the 10th day of September, 1909, the defendant H. R. Pugh purchased 70 acres of land from one H. Burns in Parker county, Tex., and the said H. R. Pugh with his family has resided upon said 70 acres of land since said purchase.

"2. About the same time the defendant J. W. Light purchased a small farm of about 70 acres, situated near the said farm of H. R. Pugh, and since said purchase has resided with his family on said farm.

"3. On the 1st day of July, 1910, the said H. R. Pugh and J. W. Light purchased from F. M. Copps 70 acres of land joining said farms of H. R. Pugh and J. W. Light for the consideration of $1,400. That the title to said 70 acres was then in F. M. Copps, by agreement of all parties, the conveyance was made by deed direct from F. M. Copps to H. R. Pugh and J. W. Light, and the total con-

sideration was to be paid by H. R. Pugh and J. W. Light to plaintiff, he having advanced the entire purchase price, and was evidenced by seven vendor's lien notes executed by H. R. Pugh and J. W. Light in the sum of $200 each and payable to plaintiff, and to secure said notes a vendor's 'lien was expressly retained in said deed, and said deed was duly recorded in the deed records of Parker county on the 12th day of July, 1910.

"4. On the 23d day of November, 1911, the said H. R. Pugh was indebted to the defendant J. M. Hart in the sum of $385.10, and on said date executed and delivered to said J. M. Hart his note in writing for said sum of $385.10 due October 1, 1912, with interest from date at the rate of 10 per cent. per annum, and on said 23d day of November, 1911, the said H. R. Pugh by his chattel mortgage in writing conveyed to said J. M. Hart the following described property: 'My first eight bales of cotton raised next year, 1912, raised on my farm nine and one-half miles from Weatherford on Toto Road, said eight bales to weigh five hundred pounds and to be free from all other liens, said cotton to be raised in the field north of the house. I am to plant thirty acres and work in a farmer-like way.' Said mortgage provides that it is given to secure said note for $385.10 and to cover any and all other amounts that the said Pugh then owes and might thereafter become indebted to and owe the said J. M. Hart, such as book accounts, etc., and said mortgage was on the 23d day of November, 1911, duly filed for record in the office of the county clerk of Parker county, Tex., and was on said date filed on the chattel mortgage records for said county.

"5. The said J. M. Hart after the 23d day of November, 1911, and on faith of said mortgage, sold supplies to said H. R. Pugh in the sum of $49.05 and received payment thereon in the sum of $11.70, and at the institution of this suit there was due on said account a balance of $37.35.

"6. At the institution of this suit the said H. R. Pugh was indebted to the said J. M. Hart in said sum of $385.10 with interest thereon at the rate of 10 per cent. per annum, on the 23d day of November, 1911, and the additional sum of $37.35, balance on said account.

"7. On the 26th day of March, 1912, the said H. R. Pugh and J. W. Light on good faith by their deed in writing conveyed to the plaintiff the 70 acres of land which had been conveyed to them by said F. M. Copps as aforesaid, and said conveyance was made in consideration of the cancellation and surrender by plaintiff to said Pugh and Light of said seven vendor's lien notes then held by plaintiff in the sum of $200 each with all interest due thereon. The amount due by said Pugh and Light on said notes to plaintiff was the full value of said seventy acres of land. The wife of said J. W. Light joined her husband in said deed, and said deed

signed and duly acknowledged by said Pugh and Light and the wife of Light was on said 26th day of March, 1912, delivered to plaintiff with the understanding that, if plaintiff desired, the wife of Pugh would come in thereafter and sign and acknowledge the deed; and thereafter on the 28th day of September, 1912, the wife of said Pugh signed and duly acknowledged said deed when same was presented to her for her signature by plaintiff, and said deed was duly recorded in the records of Parker county on said 28th day of September, 1912. On said 26th day of March, 1912, the wife of Pugh was prevented by sickness from coming to town and joining in the execution of said deed, but then fully approved of said conveyance for said consideration.

"8. On the 26th day of March and immediately after the delivery of said deed by said Pugh and Light to plaintiff, the said Pugh and Light and plaintiff entered into a rental contract in writing, whereby the plaintiff, in consideration of the sum of $144.50 to be paid by said Pugh and Light, rented and leased the said 70 acres to said Pugh and Light for and during the term beginning on the 26th day of March, 1912, and ending on the 31st day of December, 1912, and at the same time the said Pugh and Light executed and delivered to plaintiff their joint note for the sum of $144.50 of date March 26, 1912, and payable to plaintiff on the 1st day of November, 1912, in the sum of $144.50, with interest from maturity at the rate of 10 per cent. per annum, and providing for 10 per cent. as attorney's fees, if collected by suit or placed in the hands of an attorney for collection, and by the terms of said rental contract it was expressly agreed that plaintiff should have his preference landlord's lien as provided by the statutes to secure his rent, and in said rental contract plaintiff gave to Pugh and Light an option of buying back said 70 acres of land upon certain conditions any time prior to January 1, 1913, which option was forfeited.

"9. The said J. M. Hart had no notice of the sale of said land by Pugh and Light to plaintiff until after the first four bales had been gathered by Pugh from the said field north of his house and had been brought to market, and of said account advanced by said Hart to said Pugh after the execution of said mortgage as aforesaid the sum of $18 had been so advanced after the 26th day of March, 1912.

"10. The said 70 acres of land was rented by plaintiff to said Pugh and Light jointly, but the said Pugh by agreement with Light worked and cultivated the north half of said tract and the said Light by agreement with said Pugh worked and cultivated the south half of said tract, during the year 1912, but the plaintiff had nothing to do with said agreement between Pugh and Light.

"11. During the year 1912, said Pugh rais-

ed and gathered from the north half of said 70 acres six bales of cotton, all of which was of the value of $300, and all of which was appropriated by said Hart and applied by him on said indebtedness due him by said Pugh, and all of said six bales of cotton were gathered from the field on which said Pugh had given said Hart a mortgage as aforesaid.

"12. On the 26th day of March, 1912, when said Pugh and Light conveyed said 70 acres of land to plaintiff, no crop had been planted on said land, and all cotton grown on said land during the year 1912 was planted after the execution and delivery by said Pugh and Light to plaintiff of said deed on the 26th day of March, 1912.

"13. No part of the rents due by said Pugh and Light have been paid, but defendant J. W. Light tendered to plaintiff, Ivy, one-half of the amount of the rental note sued on prior to trial in justice court upon condition that he be released from further liability on the note.

"14. This suit was instituted in less than 30 days after the removal of the first three bales of cotton from the Ivy premises and before the last three bales had been removed.

"15. In the field north of the house referred to in said mortgage there was one patch of cotton of about 18 acres directly north of the house, and another patch of 20 acres in the same field northwest from the house, and the eight bales of cotton taken by J. M. Hart were gathered from this 20-acre patch, six bales off the Ivy land, and two bales of the home tract of Pugh, purchased by him from Burns; but all the cotton was grown in one inclosure or fence north of the house, though in two patches.

"16. This suit was instituted by plaintiff, W. T. Ivy, in the justice court of precinct No. 1 in this county against the defendants H. R. Pugh and J. W. Light, for rents on said 70-acre tract of land, known as the Ivy tract, for the year 1912 in the sum of $144.50 and interest and attorney's fees as evidenced by said rent note and for a foreclosure of his landlord's lien on all cotton grown by said Pugh and Light on said land during the year 1912, and against the defendant J. M. Hart; the plaintiff alleging that said J. M. Hart had converted to his own use and benefit part of said crop and was setting up some sort of claim or lien against all of said crop, and prayed for judgment on said rent note and for foreclosure of his landlord's lien and for judgment against said Hart for such part of said crop as had been converted by said Hart, and for judgment declaring said landlord's lien to be superior to the mortgage lien of said J. M. Hart. The pleadings of the plaintiff in said justice court and in this court were oral."

Upon these facts the trial court held that the mortgage lien of the defendant Hart on the six bales of cotton gathered by Pugh from the north half of the plaintiff's 70-acre tract was superior to plaintiff's landlord's lien. The plaintiff has appealed.

We think the holding of the trial judge was error.

[1] It is well settled in this state that a chattel mortgage executed upon property at the time not in existence may become operative if the property covered subsequently comes into the possession of the mortgagor. This, however, is not upon the ground that the execution of such instrument creates at the time a valid lien upon the thing mortgaged, for in the supposed case the thing mortgaged is not in existence, and necessarily there can be no lien against it. It is rather upon the equitable principle of estoppel, or, as it is sometimes expressed, that the subsequent acquisition of the property feeds the mortgage.

[2] It is equally well settled, under the peculiar rule of decision in this state, that the vendor of real estate retains the superior title until the purchase money is paid.

[3] Bearing in mind these rules of decision, we hold that appellant's landlord's lien is superior to appellee Hart's mortgage lien. Appellee's mortgage lien became effective upon the planting and growing by defendant Pugh of the crop embraced in its terms, but it was effective only to the extent of the interest owned by said Pugh in the crops. Pugh could in no event convey a greater title than he had, which, under the operation of our landlord's lien act (Revised Statutes 1911, art. 5475), was one subject to the lien of the landlord for rents. In other words, he never acquired an absolute title to the property previously mortgaged, but only a qualified title. So that the mortgage in the very nature of things could only operate upon the limited ownership of the mortgagor. See Neblett v. Barron (No. 6,236) 160 S. W. 1167, not yet officially reported. The principle which controls us is illustrated in the case of New Orleans & O. Ry. Co. v. Mellen, 12 Wall. 362, 20 L. Ed. 434, holding that a mortgage by a railroad company covering all its future acquired property attaches only to such interest therein as the company acquires, subject to any liens under which it comes into the company's possession. A contrary conclusion upon facts very similar has been reached by the Supreme Court of Alabama (Hamilton v. Maas, 77 Ala. 283), but the decision in that case appears to be based in part upon a statute which is not before us, and furthermore proceeds upon the theories that the purchaser of lands not paid for is the owner thereof, and that the mortgagee of chattels takes the legal title thereto, which theories are not in consonance with the decisions of this state.

The judgment of the county court is reversed, and upon the facts stated judgment is here rendered in favor of appellant

against appellee J. M. Hart for the amount of his debt against defendants Pugh and Light; that amount being less than the established value of the property converted.

Reversed and rendered.