The following statement of the nature and result of the suit is adopted from appellees' brief:
"This suit was filed in the justice court of precinct No. 1, Wilbarger county, Tex., by appellant W. H. Frith, on the 16th day of October, A.D. 1913, appellant alleging that he was the landlord of J. H. Wright and that appellee J. H. Wright was indebted to him in the sum of $27.03 for groceries and $7.50 for coal furnished to appellee during the year 1913; that said supplies were necessary in order that appellee Wright might be enabled to make a crop on land which he had rented from appellant; and that appellee was indebted to him in the sum of $18 for rent of certain land planted to corn. He prayed for judgment for foreclosure of a landlord's lien against two certain bales of cotton.
"On October 27, 1913, defendant Wright filed his answer, in which he specially denied that he was a tenant of appellant, and alleged that he and appellant together occupied and cultivated the land, which belonged to one J. S. Buchanan, who was their common landlord; that the said land belonged to J. S. Buchanan, and appellant had no interest therein, reversionary or otherwise; that appellant and appellee both stood in the same relation to said Buchanan, they both being his tenants. Appellee Wright alleged, in the alternative, that if it be found that he did not rent the land directly from the owner, J. S. Buchanan, then he became the assignee of the appellant Frith by reason of the fact that, after Frith rented all the land from Buchanan, Frith, by and with the consent of Buchanan, turned over to appellee Wright 60 acres of the land for that year, and that appellee cultivated the 60 acres of the land for that year, and that appellee cultivated the 60 acres and raised a crop thereon as the assignee of appellant and tenant of Buchanan; that he was not the tenant of appellant; and, there being no relation of landlord and tenant between appellee and appellant Wright, that no landlord's lien existed in favor of appellant for any purpose. Appellee Wright further specially denied that appellant furnished him any supplies during the year 1913, and alleged that he purchased his groceries and supplies from the King Bank Mercantile Company, and that appellant stood good for them, which meant appellant became his surety to the King Bank *Page 454 
Mercantile Company for the account, by reason of which fact no landlord's lien existed in favor of appellant to secure the same. Appellee Wright further alleged that W. S. Lundy and Mrs. E. M. Gillis held mortgages on his crop raised on said land during that year, and that said mortgages covered the two bales of cotton upon which appellant was seeking to foreclose a landlord's lien, and he prayed that said W. S. Lundy and Mrs. E. M. Gillis be made parties to the suit that their equities might be adjusted. Appellees Lundy and Mrs. Gillis filed their answers, setting up their debts against appellee Wright in the form of notes and mortgages given by Wright on the crop to secure the same, and they adopted the answer of Wright and asked that the cotton be turned over to them as per the terms of their mortgages. Appellee Lundy alleged that the second bale of the crop, which was one of the bales in controversy, had been turned over to him by appellee Wright and was taken from his possession by the sheriff, and, the amount of his debt being beyond the jurisdiction of the justice court, he asked that possession of said second bale be returned to him; and Mrs. Gillis asked that possession of the third bale, which was the other bale in controversy, be returned to her or sold and applied to her debt.
"The case was tried upon the issues made in the justice court, and resulted in a verdict and judgment for appellant for $33.03, balance on the grocery bill, and a foreclosure of the landlord's lien upon the second and third bales of cotton, and the balance of the proceeds of the sale of said cotton, if any, be divided between appellees Lundy and Gillis, in proportion to the amount their debts bore to the whole of the balance. From this verdict and judgment appellees Wright, Lundy, and Gillis appealed to the county court, where on March 20, 1914, the case was tried before a jury and submitted upon special issues, and upon the findings of the jury the court entered judgment for the appellees, from which judgment appellant has perfected the appeal to this court.
To the following questions propounded to the jury by the trial judge, answers were returned as shown:
"No. 1. Did W. H. Frith rent the land worked by J. H. Wright during the year 1913 to the said J. H. Wright? Ans. He did.
"No. 2. Did W. H. Frith, through King Bank Mercantile Company, or otherwise, furnish to the said J. H. Wright groceries or merchandise during said year 1913? Ans. He did.
"No. 3. If you answer question No. 2 in the affirmative, then please state whether or not said groceries and merchandise so furnished, if any, were necessary in order for the said J. H. Wright to make a crop on the land worked by him during that year 1913. Ans. They were.
"No. 4. Did one J. S. Buchanan rent any land to the said J. H. Wright during the year 1913? Ans. He did not.
"No. 5. State whether or not it was the intention of the parties, at the time the land was rented, that W. H. Frith alone should be the tenant of J. S. Buchanan and that the said J. H. Wright and Wright alone should be the tenant of said W. H. Frith. Ans. It was."
Upon request of the plaintiff, the court propounded further questions, which were answered by the jury as follows:
"No. 1. Has the rent, if any, due by the said J. H. Wright on the six acres of corn land been paid? Ans. It has not.
"No. 2. What amount, if any, is still due by the said J. H. Wright on said six acres of corn land? Ans. $18.
"No. 3. What amount, if any, is still due by the said J. H. Wright for the supplies furnished him during the year 1913, if any, furnished him during said time? Ans. $33.03, interest 28 1/3 cents; total, $33.31 1/3."
Upon request of appellees, the court propounded further questions, which were answered by the jury as follows:
"(1) Did J. S. Buchanan lease or rent the land in question to W. H. Frith for the year 1913? Ans. He did.
"(2) Did J. S. Buchanan lease or rent the 60 acres of land cultivated by J. H. Wright during the year 1913 to the defendant J. H. Wright for that year? Ans. He did not.
"(3) If Buchanan rented the 60 acres cultivated by defendant J. H. Wright to plaintiff W. H. Frith for the year 1913, then when did Frith's right or tenancy come to an end? Ans. 12 — 31 — 1913.
"(4) From whom did the defendant J. H. Wright rent the land, if he rented it, and when did his tenancy end? Ans. From W. H. Frith, ended 12 — 31 — 1913.
"(5) Did plaintiff W. H. Frith have any interest in the land coming to him after defendant J. H. Wright's occupancy ended? Ans. None, only that rent should be paid.
"(5a) What was the market value of these two bales of cotton at the time they were attached? Ans. About 12 cents middling basis.
"(6) Has the plaintiff W. H. Frith ever paid for the supplies furnished to defendant J. H. Wright for the year 1913? Ans. He has not.
"(7) Did the plaintiff W. H. Frith ever own the supplies that were furnished to defendant J. H. Wright for the year 1913? Ans. No.
"(8) Has plaintiff W. H. Frith ever paid the rent due upon the land cultivated by J. H. Wright for the year 1913? Ans. Paid part by J. H. Wright.
"(9) Has the King Bank Mercantile Company, or any member of said company, ever demanded or requested the defendant J. H. Wright to pay the account for supplies furnished him for the year 1913? Ans. Yes.
"(10) Has anything ever been paid by anybody on the account or note of the King Bank Mercantile Company for supplies furnished to said J. H. Wright during the year 1913? If so, who paid it? Ans. Yes, by J. H. Wright, by order of W. H. Frith.
"(11) Has any portion of the rent for the 60 acres of land occupied by defendant J. H. Wright been paid for the year 1913? If so, who paid it? Ans. Yes, paid by J. H. Wright, by order of W. H. Frith.
"(12) Does the intervener W. S. Lundy hold a mortgage on any of the cotton attached in this suit? If so, which bales? Ans. Yes, the second bale of crop.
"(13) Does the intervener Mrs. E. M. Gillis hold a mortgage on any of the cotton attached in this cause? If so, which bales? Ans. Yes, third bale of crop."
The jury having found that Frith sublet to Wright 60 acres of the premises leased from Buchanan for the entire term of the original lease, appellees insist that the court did not err in holding that such subletting was an assignment and in rendering judgment accordingly. In a suit between Buchanan, the owner, and Wright, the sublessee, a construction of the sublease as an assignment would be correct; but, where the controversy arises between the lessee and subtenant, the transfer will be held to operate as a sublease rather than an assignment when such is clearly the intention of the parties to the contract. The jury found:
"It was the intention of the parties at the time the land was rented that W. H. Frith alone should be the tenant of J. S. Buchanan, *Page 455 
and that the said J. H. Wright and Wright alone should be the tenant of W. H. Frith."
The weight of authority is that the parties had the right to enter into such a contract and their intention should control in its construction. In Howeth v. Anderson, 25 Tex. 573-574, 78 Am.Dec. 538, the court said:
"Leases are construed, like other written agreements, so as to give effect to the intention of the parties. To arrive at the intention, regard is to be had to the situation of the parties, the subject-matter of the agreement, the object which the parties had in view at the time, and intended to accomplish. A construction should be avoided, if it can be done consistently with the tenor of the agreement, which would be unreasonable or unequal; and that construction which is most obviously just is to be favored, as most in accordance with the presumed intention of the parties."
1 Tiffany on Landlord Tenant, § 36, declares the rule in this language:
"The courts having particular cases had occasion, in construing the language of an instrument of lease, to apply certain general rules applicable in the construction of all written instruments; the object being to discover the intention of the parties, the language of the whole instrument will be considered with this in view, and inconsistent clauses may be ignored as being the result of mistake. The circumstances existing at the time of the making of the lease may be considered for the purpose of arriving at the meaning of the parties. Likewise the construction placed by the parties themselves on the language used may be considered, in case of doubt as to its meaning."
In Underhill on Landlord Tenant, § 179, it is said:
"The general rule that the nature of an instrument depends upon its construction, and that this is always a question of the intention of the parties, is applicable to a lease. Whether an instrument is or is not a lease always depends upon what the parties intended it to be. The intention under general rules must be collected from the whole instrument regarded in the light of the surrounding circumstances. The fact that the parties called it a lease is not always controlling. The question whether an instrument is or is not a lease is sometimes very important, for frequently by statute the landlord is entitled to remedies under a lease which parties to other contracts cannot enforce. The intention for this reason is particularly important; for, if the parties did not intend the instrument to be a lease, then it follows that they did not intend that the owner of the lease should have these remedies against the other parties to the contract which the landlord generally possesses."
In Craig v. Summers, 47 Minn. 189, 49 N.W. 742, 15 L.R.A. 236, it is said:
"It is also well settled that the same instrument may in law create an assignment of the term, as between the original lessor and the assignee, and also the relation of landlord and tenant between the parties to the second demise."
It will be observed in this case the original lessor and owner of the premises, Buchanan, is asserting no lien, but testified that he looked alone to Frith for the rent. After announcing the general rule that if the lessee parts with the entire lease it is an assignment, the court, in Stewart v. L. I. R. Co., 102 N.Y. 608, 8 N.E. 201, 55 Am.Rep. 844, said:
 "But as between the original lessee and his lessee or transferee, even though the original lessee demises his whole term, if the parties intend a lease, the relation of landlord and tenant, as to all but strict reversionary rights, will arise between them. The effect therefore of a demise by a lessee for a period equal to or exceeding his whole term is to divest him of any reversionary right and render his lessee liable, as the assignee, to the original lessor; but at the same time the relation of landlord and tenant is created between the parties to the second demise, if they so intended. Taylor, L. T. (7th Ed.) 109, note s, 16, a, 5; 1 Washb. Real Prop. (4th Ed.) 515, note 6: Adams v. Beach, 1 Phila. (Pa.) 99 (178); Indianapolis, etc., Union v. Cleveland, etc., Railway Co., 45 Ind. 281; Lee v. Payne, 4 Mich. 106; Lloyd v. Cozens, 2 Ashm. [Pa.] 138; Wood v. L. T. (Banks' Ed.) § 347. These rules are fully recognized in this state. Prescott v. De Forest, 16 Johns. [N.Y.] 159; Bedford v. Terhune 30 N.Y. 457 [86 Am.Dec. 394]; Davis v. Morris, 36 N.Y. 569; Woodhull v. Rosenthal, 61 N.Y. 391."
The case of Cross v. Upson, 17 Wis. 618, was an action by Cross, the owner of property, for rent on the lease of a storeroom. The court instructed the jury that the agreement to rent for one year at a rate less than that called for by the deed did not amount to a new lease, but was merely an agreement to reduce the rent for one year on the existing lease, and in effect instructed the jury that, from Upson's occupancy of the premises from the lessee Strickland, an assignment might be inferred. Dixon, C.J., said:
"If the defendant (Upson) and Strickland are to be believed, the lease was not assigned, nor was it intended to be, and yet their testimony is virtually excluded. The jury were instructed as if it were not in the case. Instead of submitting the question to the jury upon the inference raised by law in favor of an assignment from possession and payment of rent by the defendant and upon the opposing evidence, the judge gave it to them upon the inference alone, and that not as a mere inference liable to be overcome by direct proof to the contrary, but as in its nature conclusive of the fact. They were told that no assignment in form was proved, but that it might be inferred from the fact that the defendant entered and occupied, though it was urged that the defendant and Strickland both denied it. `I hold that the assignment may be proved by facts and circumstances; there is no difficulty till May, 1858,' etc. It seems to us that the jury must have looked upon this as equivalent to a direction in terms to disregard the testimony of Strickland and the defendant — that it was of no weight — in opposition to the fact that the defendant had entered and occupied. And then they were told that an agreement for a reduced rent for one year from May 1, 1858, did not amount to a new lease, but was merely a reduction of rent upon the old one for one year. * * * There can be no doubt of the correctness of the proposition stated in the charge that the law infers an assignment from the fact of entry and occupation. A like presumption arises from payment of rent, but in either case it is only a presumption — prima facie evidence merely — and liable to be rebutted by proof that the person charged as assignee never in fact had an assignment of the lease. This may be done, not only by showing an undertenancy, which is the relation ordinarily established between the lessee and the party in possession by proof that there was no assignment, but by showing other facts disproving an entry as assignee. Quakenboss v. Clarke, 12 Wend. [N.Y.] 555. * * * And I have no *Page 456 
doubt the presumption could be effectually repelled by proof that the supposed assignee entered against the will of the lessee, as, for instance, he took unlawful or forcible possession. If he enters with the lessee's assent, but without assignment, the result must be an undertenancy of some kind, for years from year to year, at will, or by sufferance. In this case, if, as deposed by the defendant and Strickland, the defendant entered without an assignment of the lease, and without any agreement as to the time of holding or the rate and times of payment of the rent, he was what may be properly called an undertenant at will to Strickland; though as to the plaintiff, before the reletting at the diminished rent, he might, by reason of the covenant against under leasing without consent in writing, and of the condition for forfeiture in case of violation, have been regarded as a quasi tenant at sufferance. Taylor's Landlord Tenant, § 65."
The effect of this rule is to place the crop in many instances under a double lien. It has been held in this state more than once that, where the premises or a part thereof are sublet with the consent of the original lessor, the sublessee "occupies the relation of tenant to the landlord and the original tenant." Marrs v. Lumpkins,22 Tex. Civ. App. 448, 54 S.W. 777; Forrest v. Durnell, 86 Tex. 651,26 S.W. 481.
It appears that, at the time the land was leased, Buchanan expressly waived his lien in favor of Frith and looked alone to him for the rent of the entire 320 acres. Under these circumstances, it was not only the right of Frith, but it became his duty, to collect the rent from the subtenant Wright. Pressler v. Barreda, 157 S.W. 435. As we understand the rules of law applicable to the facts of this case, as found by the jury, a landlord's lien existed in favor of Frith for the benefit of both himself and his lessor Buchanan.
The landlord's lien being a preference lien, and the jury having found that the supplies were furnished to Wright by Frith through the King Bank Merchntile Company, and that they were necessaries to enable Wright to make his crop, we think Frith's rights are superior to those asserted by the mortgages. Kelley v. King, 18 Tex. Civ. App. 360, 44 S.W. 916. The trial court's action in entering the judgment non obstante veredicto is a practice not permissible under the statutes of this state. Fant v. Sullivan, 152 S.W. 521.
In appellee's brief we find a statement of numerous facts testified to by witnesses sustaining their contention, and which we think would have supported contrary findings by the jury. This court, as well as the trial court, was bound by the findings when there was any evidence to support them.
After a careful review of the entire record, we think the court below erred, and judgment is here rendered for the appellant W. H. Frith for the whole amount of his claim and for a foreclosure of his landlord's lien against the two bales of cotton in controversy.
Reversed and rendered.
 On Motion for Rehearing.
In an extended motion for rehearing, appellees contend that they are "innocent lienholders" having a valid mortgage on the property in controversy, and not in any sense parties to the lease contract or having any notice whatever thereof, and that the effect of our decision is to destroy "the doctrine of innocent lienholders" in this state. If any such doctrine exists in this state, appellee cannot claim the benefit of it. Even though parties may have intended and agreed that no such relation exists between them, they have frequently been held to be partners, principal and agent, and master and servant, etc., as to third parties. Such adjudications, however, are based upon estoppel and want of notice to the third party. This rule has no application to the relationship existing between the owner and the occupant of the land. The statute is itself notice to all parties dealing with the occupant of the terms and conditions of his tenancy, and the landlord is never bound by information not obtained from him or one authorized to speak for him. The possession of land is prima facie evidence of notice to the world of whatever right or title the possessor may have, and the possession of a tenant gives notice of whatever right the landlord has as fully as if the premises were occupied by the landlord in person. As said in 2 Underhill on Landlord Tenant, pp. 1431-1435:
"On the other hand, if the seller of a crop growing on land occupied by him informs a prospective purchaser that he is a tenant, the purchaser by that alone has knowledge of a fact that compels him to make further inquiry as to the ownership of the land and whether there is any rent due from the tenant to the landlord. If the purchaser knows the seller is a tenant and has raised the crop sold on the premises, he must inquire as to whether the rent is paid, and, if he does not do so, he will be presumed to have notice and knowledge of all facts he might thus have ascertained by due inquiry. The purchaser of a crop grown on rented land, who has notice of sufficient facts and circumstances to put a prudent man on inquiry and to cause him to exhaust all reasonable sources of information, is not a purchaser in good faith without notice if he fails to make further inquiry. For it is well settled that the fact that the purchaser of a crop knows, before he buys, that it was grown on rented premises, is sufficient to put him upon inquiry as to the existence and the extent of a landlord's lien for unpaid rent. The misrepresentation of the tenant to the purchaser of his crops upon which the landlord has a lien for rent that the rent has been paid is not binding upon the landlord. It is the purchaser's duty to make inquiry of the landlord. So far as the rights of purchasers who have knowledge of the existence of the relationship of landlord and tenant between the seller of personal property or some third person are concerned, it is settled that the statutory lien of a landlord for rent on property or the crop of a tenant is paramount to the rights of such purchaser." Section 834.
"So far as liens for advances made by the landlord to the tenant to aid him in making or harvesting a crop are concerned, it has been held that the landlord's lien for advances is par amount to the lien of a chattel mortgage executed and filed prior to the coming into *Page 457 
existence of a lien of the landlord. So, also, a landlord's statutory lien for rent on the tenant's goods, taken upon the premises to commence with the tenancy is paramount so long as the goods remain on the premises, both to a subsequent chattel mortgage thereon and to one executed by the tenant before the goods were taken upon the premises." Section 835.
We find that the decisions of this state sustain the rule announced in Underhill. As early as 32 Texas, in the case of Mathews v. Burke, page 434, Morrill, C.J., said:
"Good faith and innocence, and ignorance of the (landlord's) statutory lien in this or any other similar case, forms no defense to the purchaser. The statutes of the state inform all persons that a lien exists upon all products and crops of a rented place for the payment of the rent till the 1st day of January succeeding the raising the crop, and these same statutes bid all purchasers of cotton to beware how they purchase till that time. It is not our province to decide upon the hardness of a statute in its application to a particular case, or to pronounce it good or bad, but simply to say what the statutes provide in a given state of things."
If a bona fide purchaser for value could acquire no title superior to that of the landlord, it certainly will not be contended that a subsequent "innocent lienholder" is in any better plight.
"It is claimed by appellant that she is a purchaser of said property in good faith for a valuable consideration, without notice of appellee's lien thereon for rent. Concede that she purchased in good faith, and paid a valuable and full consideration for said property, and had no actual notice of appellee's lien for rent, still, under the law, she took the property subject to appellee's lien. She had constructive notice of said lien at the time she purchased because of the fact that said property was upon the rented premises. Revised Statutes, art. 3122a; Block v. Latham63 Tex. 414; Rosenberg v. Shaper, 51 Tex. 134; Meyer v. Oliver, 61 Tex. 584
." Lehman v. Stone, 16 S.W. 784.
"We think the clear intent of the Legislature in the passage of this law (Landlord and Tenant Act) was to give the landlord full protection by charging the world with notice of the lien so long as the crop remained upon the rented premises and for 30 days after its removal therefrom, and by forbidding the tenant, without the consent of the landlord, to remove any part of the crop from the rented premises, or permit the same to be removed, while any rent or advances remained unpaid. Under this statute, the doctrine of caveat emptor applies in all sales by the tenant of the crop grown upon the rented premises, and the purchaser of such crop takes no better title than his vendor had at the time of the sale. It has been held, in some of the states which have a statute similar to ours, that a purchaser of crops without actual notice of the landlord's lien will be protected in his title to the property so purchased against the claim for rents; but we think the weight of authority and the better reasoning sustains the doctrine announced by Judge Morrill, in the case of Mathews v. Burke, supra. As before stated, the question does not seem to have directly arisen in any of the adjudicated cases in this state other than those before mentioned, but it has been uniformly stated in the opinions of our Supreme Court, in cases in which the landlord's lien has been the subject under consideration, that such liens exist in favor of the landlord against any one who has purchased the crop of the tenant within 30 days after its removal from the rented premises. The frequent repetition in the decisions of this unqualified statement of the law tends strongly to the conclusion that none of our courts regard the lien as at all affected by the question of notice." American Cotton Co. v. Phillips, 31 Tex. Civ. App. 79, 71 S.W. 320; York v. Carlisle,19 Tex. Civ. App. 269, 46 S.W. 257; Marsalis v. Pitman, 68 Tex. 624,5 S.W. 404; Ivy v. Pugh, 161 S.W. 939; Jones on Liens (2d Ed.) §§ 555, 556.
Appellee's mortgages show they had actual notice that Wright did not own the land upon which the cotton covered by their liens was raised; but, under decisions of this state from which we have quoted above, the statute was sufficient notice to destroy their innocency as lienholders.
J. S. Buchanan testified:
"I looked to Mr. Frith for the rent, and expected to hold him responsible for it, and do hold him responsible for it. I rented to Frith the whole of it and hold him responsible therefor."
It is clear from this uncontradicted statement that he waived the lien which would have been his in case of an assignment of the lease, and this testimony is quoted in appellee's statement. But for the agreement that the relation of landlord and tenant, rather than the relation of assignor and assignee of the lease, exists between the parties, the authorities cited by appellee would be pertinent; but, where the evidence shows that the relation of landlord and tenant exists between Frith and Wright, the decisions have no bearing whatever upon this case. The pleadings, evidence, and findings present one case and appellees have briefed another.
Appellees Lundy and Gillis, on motion for rehearing, have cited Wolfe v. Houston L. I. Co., 44 Tex. Civ. App. 379, 98 S.W. 1069; F. Groos Co. v. Chittim et al., 100 S.W. 1006. These cases clearly announce the doctrine that, where a landlord's lien covers more property than enough to satisfy the rent and debt for advances, he may be made to marshal his securities at the instance of a subsequent mortgagee holding a lien up on part of the tenant's crop or other proper ty. These authorities certainly have no application to this case. Appellees, by their pleading, did not show a state of facts entitling them to require either Frith or Buchanan to marshal; neither is there any evidence that Wright had more property subject to the landlord's lien than was sufficient to satisfy the debts against him in favor of Wright. This is relief which must be insisted upon in the court below, and it is too late to raise the question here.
 The motion for rehearing is overruled *Page 458