DOUGLAS PROPERTIES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40146. Promulgated November 17, 1930.

*H. J. Richardson, Esq.,* and *Harold R. Young, Esq.,* for the petitioner.

*Maxwell E. McDowell, Esq.,* for the respondent.

OPINION.

ARUNDELL: The decision of the question raised herein turns upon whether the agreements entered into on March 21, 1925, between the petitioner and the Flagler Street Co. are assignments or contracts of sale of the leasehold interests of the former in the properties, as contended by it, or subleases as the respondent concluded. The conveyances having transferred to the Flagler Street Co. all of petitioner's leasehold estate in the properties for the remainder of the terms of the leases, leaving no reversion in the transferor, undoubtedly created assignment of the terms as between the original lessor and the Flagler Street Co. Our problem here, however, is to de-

termine the relationship the instruments created between the parties thereto.

It is well settled that an instrument may in law create an assignment of the term of a lease as between the original lessor and the assignee, and at the same time the relation of landlord and tenant between the assignee and his lessee, if the parties so intend, even though the demise be for the whole of the unexpired term of the lease, and the lessee be divested of all revisionary rights. The rule is thus stated in *Stewart* v. *Long Island R. Co.*, 102 N. Y. 601; 8 N. E. 200:

> But, as between the *original lessee* and *his lessee* or transferee, even though the original lessee demises his whole term, if the parties intend a lease, the relation of landlord and tenant, as to all but strict reversionary rights, will arise between them.

> The effect, therefore, of a demise by a lessee for a period equal to or exceeding his whole term, is to divest him of any reversionary right, and render his lessee liable, as assignee, to the original lessor; but at the same time the relation of landlord and tenant is created between the parties to the second demise if they so intended. Tayl. Landl. & Ten. (7th Ed.) 109, note s, 16, a, 5; 1 Washb. Real Prop. (4th Ed.) 515, note 6; *Adams* v. *Beach*, 1 Phila. 99, 178; *Indianapolis, etc. Union* v. *Cleveland, etc. Ry. Co.*, 45 Ind. 281; *Lee* v. *Payne*, 4 Mich. 106; *Lloyd* v. *Cozens*, 2 Ashm. 138; Wood, Landl. & Ten. (Bank's Ed.) § 347. These rules are fully recognized in this state. *Prescott* v. *DeForest*, 16 Johns. 159; *Bedford* v. *Terhune*, 30 N. Y. 453, 457; *Davis* v. *Morris*, 36 N. Y. 569; *Woodhull* v. *Rosenthal*, 61 N. Y. 391, 392.

Other authorities are to the same effect. *Potts-Thomson Liquor Co.* v. *Potts*, 135 Ga. 451; 69 S. E. 743; *Nunnally Co.* v. *Bromberg & Co.*, 217 Ala. 180; 115 So. 230; *Saling* v. *Flesch*, 277 Pac. 612; *Frith* v. *Wright*, 173 S. W. 453; *Davis* v. *First National Bank of El Paso*, 258 S. W. 241; 16 R. C. L. Landlord and Tenant, § 320; Thompson on Real Property, § 1373.

The resolutions adopted by the directors of petitioner on March 14, 1925, specifically provide for the leasing of the properties, which clearly indicates that they intended its officers to enter into such agreements rather than assignments. The contracts of March 21, 1925, also contain clear evidence of an intention to create the relation of landlord and tenant between the parties thereto. The instruments carry the title of "lease"; the Flagler Street Co. throughout the contracts is referred to as the "Tenant"; the properties transferred are designated as the "leased premises" or "demised premises"; the amount to be paid each year during the terms of the conveyances is referred to as "rentals" and "lease money"; Article II contains the provision that "The Owner [petitioner] * * * has and by these presents does let, lease, rent and demise unto the Tenant * * *," terms which would probably not have been used had the parties intended the instruments to operate as assignments or contracts of sale; the contracts provide that the

" Tenant " shall have and hold the premises for the specified terms " unless this lease be sooner terminated by reason of the lease being cancelled   *   *   *."

Considering the instruments as a whole in connection with the prior action of petitioner's directors, we think there can be little doubt that, as between the petitioner and the Flagler Street Co., the intention was to create the relation of landlord and tenant and not merely to assign or transfer the leases. This holding is not contrary to that in *L. T. Waller et al.*, 16 B. T. A. 574; affd., 40 Fed. (2d) 892, for there it was clear from the terms of the instruments that the intent was to assign and not to sublease.

When petitioner, by assignment, acquired the unexpired terms of the Hahn and Hood leases it acquired a capital asset. The cost thereof in the taxable year, $110,000, represented a capital expenditure exhaustible over the life of the asset. Had the petitioner acquired by purchase a specific building, making a down payment of $110,000 and then leased it, receiving a cash bonus in addition to the rents, there would be no question that such bonus constituted income. We fail to see where there is any distinction between such a case and the one before us. The payments made in either case would be merely a part of the price paid by the lessee for the right to use the property; it created no equity in the property in favor of the lessee and in no sense could it be said to be a return of capital to the lessor.

In *O'Day Investment Co.*, 13 B. T. A. 1230, the owner of a building leased it for a term of years at a stipulated monthly rental plus a cash payment of $20,000 which was received by the owner in 1920. We held that that amount was taxable income, saying in part:

It is immaterial whether we call the $20,000 payment a bonus, additional rent payable in advance, or by any other term, it is a profit arising out of the transaction, to wit, the leasing of the property, and is taxable when received as the petitioner was on the cash receipts and disbursements basis.

Petitioner is seeking to apply here the rule which permits the lessee to amortize the cost of securing a lease, or improvements on the property. The expenditure by the lessee represents a capital investment, thus differentiating the case from the one at bar.

In *James M. Butler*, 19 B. T. A. 718, a lessee of certain real estate transferred all his interest in the lease to the taxpayer for a cash consideration. In the same year the taxpayer subleased the properties for stipulated annual rentals and in addition received the sum of $15,000.

We held that amount to be income, saying:

As pointed out hereinbefore, the lessee under a 99-year lease renewable forever, does not receive title to the property covered by the lease. Here, the petitioner became the lessee of the Spring and Water Street property and thereafter subleased the same. Any amount which he received under such sublease was income to him when received.

We are accordingly of the opinion that the respondent correctly disallowed the alleged loss and included in income the $50,000 received by petitioner on the execution of the leases.

*Decision will be entered for the respondent.*