FIRST NAT. BANK OF QUITAQUE v. POINTER et al.

No. 3853.

Court of Civil Appeals of Texas. Amarillo.

June 22, 1932.

O. R. Tipps, of Silverton, for appellant.

C. D. Russell, of Plainview, for appellees.

HALL, C. J.

This appeal is submitted upon an agreed statement under R. S. art. 1837, subdivision 2, and art. 2280. The substance of the said statement is as follows:

On the 17th day of July, 1931, the First National Bank of Quitaque, Tex., filed suit in the district court of Briscoe county, Tex., against L. V. Pointer, J. B. Spillman, D. W. Fyffe, the Southern Plow Company, the Southern Rock Island Plow Company, the

First National Bank of Floydada, Tex., the W. C. Cowan ·Grain Company, the Farmers' Grain· Company, and the Oklahoma Wheat Pool Elevator Corporation, alleging in substance that the defendants Pointer and Spillman, on October 23, 1930, had executed a note to the plaintiff, which said note was subsequently renewed, in the sum of $1,249.10, and at the same time executed to the plaintiff as security for said note a chattel mortgage on their two-thirds interest in 600 acres of wheat then being sown and to be sown on section 39 in block B–3, Briscoe county, Tex.; that said wheat had been harvested and the two-thirds interest had been stored and placed in the three elevators of the defendants W. C. Cowan Grain Company, Farmers' Grain Company, and the Oklahoma Wheat Pool Elevator Corporation, all at Tulia, Tex. Plaintiff prayed for judgment for its debt and foreclosure of its chattel mortgage lien, and also asked the court to declare its chattel mortgage lien superior to any liens claimed by other defendants.

The defendants D. W. Fyffe, Southern Plow Company, L. V. Pointer, and J. B. Spillman, though duly cited, defaulted.

The First National Bank of Floydada, Tex., filed answer, and all parties agreed that said First National Bank of Floydada, Tex., had a valid and prior first lien on one-third of one-fourth of the wheat produced and harvested off of said 600 acres by virtue of a valid assignment made to it by D. W. Fyffe and that said bank should recover that amount of bushels, or the proceeds of the sale thereof.

The W. C. Cowan Grain Company answered, tendering into court the sum of $181.89, being the proceeds of all wheat delivered to it involved in this controversy, and claimed to be merely a stakeholder, asking for $10 attorney's fees for answering. The Farmers' Grain Company tendered into court the sum of $484.13, being the proceeds of all wheat delivered to it in controversy herein, claimed to be a stakeholder, and asked for $15 attorney's fees. The Oklahoma Wheat Pool Elevator answered by tendering into court the sum of $100.16, being the proceeds of said wheat in controversy herein, and asked to be discharged with its costs.

That the total value of said wheat involved is $766.13, and is tendered into court.

The Southern Rock Island Plow Company filed answer, alleging that D. W. Fyffe was the owner of the land and Spillman and Pointer were joint tenants, renting the said land from Fyffe to sow a wheat crop during the year 1930, paying rent therefor of one-third of the wheat produced; that said Southern Rock Island Plow Company claimed a lien on said two-thirds of the wheat produced on said 600 acres of land by virtue of an assignment to it by D. W. Fyffe of two notes executed by L. V. Pointer and J. B. Spillman in settlement for two certain farm tractors, one grain drill, and one plow, sold to said L. V. Pointer and J. B. Spillman by D. W. Fyffe, and used by said Pointer and Spillman in planting and tending said wheat, the two said notes being as follows: One for $550.76, dated September 1, 1930, due July 1, 1931; and one for $425, dated September 10, 1930, due July 1, 1931. That said two notes were assigned and transferred to Southern Rock Island Plow Company by D. W. Fyffe before maturity for a valuable consideration; have not been paid, but are still valid obligations due and owing to said plow company, and the said Southern Rock Island Plow Company prays for judgment declaring its lien prior to the lien held by the plaintiff.

The following facts were proved on. the trial of said cause:

That D. W. Fyffe was the owner of the land during the years 1930 and 1931 when the wheat was harvested; that he rented the land to L. V. Pointer and J. B. Spillman in the spring of 1930, and that the rental contract was for the joint tenants to. sow said 600 acres of land in wheat in the fall of 1930 and harvest it in 1931, and to pay as rent therefor one-third of the wheat produced on said land; that D. W. Fyffe sold to the tenants two certain farm tractors, one wheat drill, and one cylinder plow to enable them to plant and sow said wheat, and as settlement therefor the said Fyffe took their two certain notes as alleged, on September 1, 1930, and September 10, 1930, said two notes being secured by reserving a lien on said machinery to secure the purchase price, as well as the statutory landlord's lien on the crops produced on said land; that on or about the dates of the respective notes executed by Pointer and Spillman to Fyffe, the said Fyffe transferred and assigned the two said notes by indorsement to the Southern Rock Island Plow Company for a valuable consideration, which notes were introduced in evidence.

That after the execution of the notes by Pointer and Spillman to Fyffe, and after the assignment of the said notes by Fyffe to the Southern Rock Island Plow Company, the said D. W. Fyffe went to the First National Bank of Quitaque, Tex., the plaintiff herein, and requested said bank to advance the necessary money to Pointer and Spillman to enable them to purchase seed, gasoline, oils, supplies, and pay labor to enable them to plant said wheat crop of 600 acres; that if said Bank would advance said money to his tenants, he, the said Fyffe, the landlord, would waive any lien he might have to the two-thirds interest of the tenants to the extent of the money advanced by said bank to Pointer and Spillman to enable them to plant said crop; and that, acting upon the request of said Fyffe and of the said Pointer and ·Spillman, the said

First National Bank of Quitaque, Tex., did advance to said tenants the sum of $1,249.10, as evidenced by their note, and to secure the payment of the note the tenants, Pointer and Spillman, did on the 23d day of October, 1930, execute and deliver to the plaintiff a chattel mortgage on the two-thirds interest of the tenants in said 600 acres of wheat, which said mortgage was duly recorded.

That the money was used by Pointer and Spillman in planting and tending said wheat; that the wheat was harvested in June of 1931, and the two-thirds interest thereof was deposited in the elevators at Tulia, Tex., and that after paying the cutting and hauling expenses, there was left the sum of $766.18, which was tendered into court by the said elevators as alleged.

That at the time the said D. W. Fyffe waived any lien he might have to the two-thirds interest in said wheat, to the First National Bank of Quitaque, Tex., as consideration for said bank furnishing his tenants the money to plant said wheat crop, the said bank had no notice, actual or constructive, of any assignment or transfer by the said Fyffe to the Southern Rock Island Plow Company of the notes executed by the tenants Pointer and Spillman to Fyffe, and had no notice, actual or constructive, of any claim or interest held by any person to the two-thirds interest of the tenants in said wheat, except the statutory landlord's lien of Fyffe as owner of the land, and the said bank would not have advanced the money to Pointer and Spillman had Fyffe not agreed to waive any lien he might have to the extent of the money advanced by the bank to Pointer and Spillman to use in preparing the land and sowing and tending said wheat.

It was further proved that D. W. Fyffe received his rent of one-third of the wheat at the combine at the time it was harvested, and that the wheat for which the proceeds was tendered into court by the three elevator companies was the net proceeds of the two-thirds of the wheat belonging to Pointer and Spillman as tenants, subject to such liens as the plaintiff and Southern Rock Island Plow Company had. That is, the proceeds of the wheat tendered into court was the proceeds of the wheat that the plaintiff and the Southern Rock Island Plow Company are each contending to have a superior lien against.

That the proceeds of the said wheat is not as much as the debt to the plaintiff by Pointer and Spillman, which debt is the sum of $1,442.55, principal, interest, and attorney's fees.

The case was tried before the court without the intervention of a jury and judgment rendered in favor of the First National Bank of Quitaque, Tex., against the defendants L. Y. Pointer and J. B. Spillman for the sum of $1,442.55, with 10 per cent. interest from

date; the First National Bank of Floydada, Tex., was adjudged to have a prior claim on one-fourth of one-third of the funds tendered into court and judgment entered in its favor for the sum of $63.84 out of such funds tendered into court, with its costs; the defendant Southern Rock Island Plow Company was adjudged to have a claim on the balance of said funds prior to all other parties and the judgment decreed that it recover the balance of said funds, in the sum of $677.34, with all costs in its behalf incurred; that the defendants Pointer and Spillman pay all costs incurred; that out of the funds paid into court the clerk pay the Cowan Grain Company $10 and the Farmers' Grain Company $15. All other relief prayed for was denied, and the plaintiff bank alone duly excepted and prosecutes this appeal.

The only question presented here is as to the priority of the respective liens held by the plaintiff bank and by the Southern Rock Island Plow Company. It will appear from the foregoing statement that Fyffe as landlord sold to his tenants Pointer and Spillman some farm implements for the purpose of enabling them to make the crop.

Under the express provisions of R. S. art. 5222, he had a landlord's lien upon the two-thirds interest of the tenants to secure the value of such tools and implements as evidenced by the two notes which the tenants executed in the month of September at the time they purchased the implements. Frith v. Wright (Tex. Civ. App.) 173 S. W. 453; Caswell v. Lensing & Bennett (Tex. Civ. App.) 183 S. W. 75. According to the record Fyffe transferred these notes for value before maturity to the Southern Rock Island Plow Company, the effect of which was to transfer the landlord's lien securing the payment of said notes. Murray v. Able, 19 Tex. 213, 70 Am. Dec. 330. It is the general rule that liens given by statute need not be recorded in order to give notice to purchasers of the property covered by such lien unless such registration is required by the statute itself. Heisig v. Vaughan & Gardner (Tex. Civ. App.) 15 S.W.(2d) 113. It is clear from the authorities that the Southern Rock Island Plow Company by the purchase of the notes stood in the place of the landlord Fyffe with reference to the property and it was entitled to sue upon the notes and foreclose upon the implements for which they were given, as well as upon the two-thirds interest which the tenants had in the wheat. The judgment does not show that the lien was foreclosed upon the implements. By proper pleadings the bank might have required the plow company to marshal its securities and sell the tractor and other farm implements first before resorting to the wheat, but this was not done in the trial court and the question cannot be raised here. Frith v. Wright, supra; David v. Roe (Tex. Civ. App.) 271 S. W. 196.

No complaint is made of Fyffe's action in inducing the bank to make the loan to his tenants. From what has been said the conclusion is inevitable that the plow company had a preference lien upon the wheat as against the bank. It is not shown that Fyffe attempted to assign his lien as landlord to the bank. The record states that he told the bank he would waive his landlord's lien in favor of the bank if the latter would furnish the money required by his tenants in making the crop. At that time he had no lien to waive which could be given preference as against the plow company. The bank simply had a chattel mortgage, executed more than a month after the notes held by the plow company. The registration laws have no application to the transfer by the landlord of his notes and lien to the plow company, and the bank is in no position to assert any right as an innocent lienholder. Frith v. Wright, supra.

Because the trial court has rendered a correct judgment, it is affirmed.